Argued and submitted August 10, 2020; conviction on Count 1 vacated and remanded, remanded for resentencing, otherwise affirmed March 3, 2021

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

THOMAS JOSEPH LEE ZIMMERMAN,
*Defendant-Appellant.*

Jefferson County Circuit Court
18CR22187; A169034

483 P3d 39

Defendant was convicted of, among other things, first-degree aggravated theft. On appeal, he argues that the trial court should not have considered a theft-by-taking theory of that crime, because he could not be criminally liable on that theory based on his acts after the taking was complete. *Held*: The trial court erred by failing to rule out consideration of that theory. Under the circumstances of this case, defendant could not have been criminally liable on a theft-by-taking theory, but could be liable on a theft-by-receiving theory. Remand was required for the court to determine or clarify its verdict on that theory, and for resentencing.

Conviction on Count 1 vacated and remanded; remanded for resentencing; otherwise affirmed.

Annette C. Hillman, Judge.

David O. Ferry, Deputy Public Defender, argued the cause for appellant. Also on the brief was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

E. Nani Apo, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Armstrong, Presiding Judge, and Tookey, Judge, and Aoyagi, Judge.

ARMSTRONG, P. J.

Conviction on Count 1 vacated and remanded; remanded for resentencing; otherwise affirmed.

**ARMSTRONG, P. J.**

Defendant appeals his judgment of conviction for aggravated first-degree theft (Count 1), ORS 164.057, unlawful possession of methamphetamine (Count 5), ORS 475.894, and second-degree criminal mischief (Count 6), ORS 164.354.[1] Defendant's case was tried to the court. He challenges the court's consideration of a theft-by-taking theory for the aggravated first-degree theft count. We agree that the trial court should have ruled out that theory of the crime. We cannot say that there is little likelihood that that error affected the outcome, because there are indications that the court might have relied on that theory to convict defendant and to subsequently set the restitution amount. We therefore vacate and remand the aggravated first-degree theft count.

The following facts are undisputed for purposes of appeal. Three men, Wescott, Guerrero, and Hamilton, took a safe from a feed store, which belonged to the feed store owner, and loaded it into a "Mr. Rooter" van that Guerrero had from his employer. The safe contained business records, bottles of alcohol, a gun, and "close to $230,000" in cash. From surveillance video of the theft, a detective was able to identify Guerrero as one of the suspects. The owner told the detective that Guerrero used to work for him and that Guerrero now worked for a plumbing company called Mr. Rooter. When police contacted Guerrero's employer a few days later, they learned that after the date of the burglary, Guerrero had not returned to work, was not responding to phone calls, and had not returned the company van.

Westcott and Guerrero tried to open the safe. They were able to pry open a corner and pull out some cash. A day or two later, Guerrero met defendant, and defendant agreed to take the safe back to his shop to cut into it with a torch. They agreed that defendant could keep whatever property he found in the safe, except that Guerrero would get "a little bit of the cash."

---

[1] Defendant was acquitted on Counts 2 through 4, in which he was accused of criminal conspiracy to commit aggravated theft, the first-degree theft of a firearm, and unauthorized use of a vehicle.

Defendant cut into the safe and found several bags of cash. Guerrero took some of the cash and left the rest. When police later arrested defendant at his shop, he showed them how he had used a torch to cut into the safe. He also provided the officers with $9,945 in cash that was on his person, and he opened his personal safe, which contained $30,146.25. Police also recovered $4,023 from defendant's wife, and $4,251 from another occupant of defendant's house. Defendant admitted that, in addition, he had spent $2,000 on a car, and a small amount on various small items and on methamphetamine. The feed store owner's business records were in defendant's woodstove, unburned.

In addition, there was testimony about the amount of cash that was recovered from Guerrero, Westcott, and Hamilton. Westcott had about $12,000, of which he said that he got about $3,500 from reaching inside the pried-up corner of the safe, and that he got the remainder after defendant opened the safe.

After the state rested its case, defendant made a motion for judgment of acquittal (MJOA) on the charge of first-degree aggravated theft (Count 1). Specifically, defendant argued that there was no evidence to support a theft-by-taking theory, because there was no evidence that defendant was involved until after the theft by taking was complete. He pointed out to the court that, under ORS 161.155, accomplice liability cannot be based on aiding and abetting the commission of a crime after the fact.

Defendant acknowledged to the trial court and to us that there was sufficient evidence for a conviction based on a theft-by-receiving theory, but he argues that the trial court should have ruled out the theft-by-taking theory. The state disagreed that the theft was complete when Guererro, Westcott, and Hamilton removed the safe from the feed store, and it argued that theft by taking was a viable theory, while acknowledging that there was no evidence that defendant had participated in the safe's removal.

The trial court denied the MJOA, stating:

"Count 1 is Aggravated Theft in the First Degree, and if you were charged in Count 1 or Count 2 with burglary, the

Court would agree with the defense theory and grant the motion for judgment of acquittal.

"In this case, you're charged with aggravated theft and criminal conspiracy to commit that theft. Defense's argument is that the theft was complete upon the taking of property from the Hay Feed and Store—let me make sure—Hay and Feed Store. The State's argument is that the theft was not yet complete. If the parties review *State v. Wilson*, [240 Or App 475, 248 P3d 10 (2011),] the court in that case discussed the important element of intent, which means that the defendant would have had to at least intend to help the other guy steal the crates in that particular case, and he has to have the intent to promote or facilitate the commission of a crime.

"When we also look at the sand dune buggy case in *State v. Watts*, 60 Or App 217, [653 P2d 560 (1982),] the wheel dune cycles, I guess they're referred to in that case, again, the court discussed the fact that the action has to be done with an intent to promote or facilitate the commission of the taking of whatever was taken, and state law is clear on that.

"A person who receives stolen property without knowledge that there's any wrongful taking until after the taking is indeed not an accomplice to the original taking. In this case, the Court is finding that there are sufficient facts in the record that [defendant] intended to promote or facilitate the commission of a crime of theft when he agreed to receive the safe, move the safe to his shop, open the safe with his own tools, keep the contents of his [*sic*] safe and put the documents related to the victim into the woodstove to burn and dispose of."

After that ruling, the defense rested.

During closing arguments, the state continued to argue the theft-by-taking theory, asserting that the theft by taking was ongoing when defendant came into possession of the safe and worked to open it and remove its contents. During defendant's closing arguments, defendant again raised the legal argument that he could not as a matter of law be convicted on a theft-by-taking theory, making the bench-trial equivalent of a jury-instruction argument. *See State v. Clum*, 216 Or App 1, 7-9, 8 n 5, 171 P3d 980 (2007) (concluding, in that bench trial, that "the ruling to which defendant assign[ed] error [was] directly analogous to a

ruling on an exception to an instruction in a jury trial"); *see also State v. Colby*, 295 Or App 246, 249-50, 433 P3d 447 (2018) ("A bench trial, by contrast, presents a special issue because when the case is tried to the court without a jury, then the legal assumptions about the elements that would suffice for a conviction do not take the form of instructions." (Citation, quotation marks, and brackets omitted.)).

On appeal, defendant argues that the trial court erred either by denying his MJOA on the theft-by-taking theory or by erroneously instructing itself on that theory.[2] The state does not argue in response that defendant *could* properly be convicted on either theory of theft; rather, the state argues only that there was sufficient evidence for defendant to be convicted on a theft-by-receiving theory.

Although the state does not address it, we must address whether the trial court could rely on a theory of aiding and abetting a theft by taking in convicting defendant on Count 1. "ORS 161.155, the aid-and-abet statute, plainly applies only to conduct prior to or during the commission of a crime" and does not create criminal liability on an aiding-and-abetting theory after the commission of a crime.[3] *State*

---

[2] We are satisfied that defendant adequately preserved his arguments and has sufficiently raised them on appeal. *See State v. Long*, 286 Or App 334, 339-40, 399 P3d 1063 (2017) ("Assuming, without deciding, that the state is correct that a[n] MJOA was not the correct procedure for defendant's challenge to a particular theory of 'physical injury,' we are nonetheless persuaded that defendant's arguments on appeal were squarely presented below and, for that reason, are properly before us. Defendant consistently argued that the evidence was insufficient to support a conviction under the 'substantial pain' theory; the state responded to that argument on its merits (never asserting that a MJOA was procedurally improper), and the trial court ruled on the merits."). Although defendant assigned error to the denial of his MJOA, he also argues that the trial court erroneously considered that theory, in the equivalent of a jury instruction error. Even if we assume without deciding that an MJOA was not the proper vehicle for such a challenge, defendant has adequately raised the legal question whether the trial court effectively misinstructed itself on that theory.

[3] ORS 161.155 provides, as relevant here:

"A person is criminally liable for the conduct of another person constituting a crime if:

"* * * * *

"(2) With the intent to promote or facilitate the commission of the crime the person:

"* * * * *

"(b) Aids or abets or agrees or attempts to aid or abet such other person in planning or committing the crime[.]"

*v. Barboe*, 253 Or App 367, 375, 290 P3d 833 (2012), *rev den*, 353 Or 714 (2013); *see also State v. Rosser*, 162 Or 293, 344, 91 P2d 295 (1939) ("The words 'aid and abet' *** manifestly have reference to some word or act of encouragement or assistance in the commission of the offense, and not to something done after the crime is complete.").

The aggravated first-degree theft statute, ORS 164.057, incorporates the first-degree theft statute, ORS 164.055, which in turn incorporates the definition of theft in ORS 164.015. That definition of theft provides, as relevant to the theft-by-taking theory:

> "A person commits theft when, with intent to deprive another of property or to appropriate property to the person or to a third person, the person:
>
> "(1) Takes, appropriates, obtains or withholds such property from an owner thereof[.]"

A theft by taking is completed when a defendant has "exercised dominion or control over the property of another and physically moved that property, however slightly." *State v. Spears*, 223 Or App 675, 699, 196 P3d 1037 (2008). The state never asserted—nor was there any evidence to support—that defendant participated in, or even knew about, the taking of the safe until after the taking had occurred. Accordingly, defendant could not be criminally liable on a theft-by-taking theory, and it was error for the trial court not to rule out that theory.

Finally, we must address whether the error is harmless. "A judgment must be affirmed, despite any error committed at trial, 'if, after considering all the matters submitted, the court is of the opinion that the judgment "was such as should have been rendered in the case."' *State v. Davis*, 336 Or 19, 28, 77 P3d 1111 (2003)." *Snyder v. Amsberry*, 306 Or App 439, 446, 474 P3d 417 (2020). The state contends that the trial court seems to have convicted defendant on a theft-by-receiving theory, for which there was ample evidence. Defendant does not dispute that he could have been convicted on a theft-by-receiving theory, but, he argues, it is not clear that the court did that. We agree with defendant that the portions of the record on which the state relies for

its argument do not establish that the trial court convicted defendant only on the basis of the theft-by-receiving theory.

In addition, as defendant points out, the fact that the trial court imposed essentially the same restitution amount for him as was imposed on Guerrero, which was based on the entire contents of the safe, indicates that the trial court likely accepted the state's argument that the theft by taking was a continuing crime and that defendant could be criminally liable for aiding and abetting that theft.[4] Further, although defendant agrees that on remand he can be convicted on the theft-by-receiving theory, he is entitled to remand for the court to consider or clarify his criminal liability on that theory. And, as defendant points out, in this case, the theory of liability likely affected the amount of restitution that the court imposed against him in the judgment.

At oral argument, defendant agreed that, under these particular circumstances, a limited remand would suffice to address the error. Accordingly, we vacate and remand Count 1 for the court to consider its verdict solely under a theft-by-receiving theory. We also remand for resentencing, and, if the guilty verdict on Count 1 is reimposed,

---

[4] The trial court imposed restitution of $102,455.36 on Counts 1 and 2. The state initially sought $102,855.36, which, according to defendant's counsel, was the same amount imposed against Guerrero for all of the property that he and his codefendants took from the victim. The trial court reduced that amount by $400, which was the value of a gun that had been in the safe, because the trial court had acquitted defendant of the theft of the gun. The state broke down that amount when the court asked it to:

"Your Honor, the restitution is based on Count 1, the Aggravated Theft. The way that breaks down is the amount of cash that was taken from the victim, $100,000 replacement cost in cash. The safe that was taken in the theft, the value of the safe itself was valued between $1,400—$1,440 and $1,700. The cash drawer that was taken from the victim's business had $429.95. The handgun that was inside of the safe had a value of between $400 and $600. There were boxes of shotgun shells inside the safe, 12 boxes, which were valued at $5.99 each, for a total of $71.88. One box of .45 caliber long shells valued at $12.99.

"One bottle of Jack Daniels Sinatra valued at $159.95. Three bottles of Crown Royal Black at $29.95 each, for a total of $89.95. Two bottles of Pendleton Whiskey at $26.95 each, for a total of $53.90."

Notably, those amounts include the value of the safe itself, which was already damaged when defendant received it, and the cash in a cash drawer "taken from the victim's business," as well as the same $100,000 in cash from the victim.

then the trial court must consider in imposing restitution only the theory on which defendant is convicted.

Conviction on Count 1 vacated and remanded; remanded for resentencing; otherwise affirmed.