Argued and submitted May 3, reversed and remanded June 3, 2021

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## CHRISTOPHER DANIEL SORROW,
*Defendant-Appellant.*

Coos County Circuit Court
18CR29531; A172166

489 P3d 1127

To obtain access to mental health treatment, defendant handed a bank teller a note that stated, "I have a bomb. Put the money in the bag," then sat in the lobby of the bank with the money, waiting for police to arrive. At the close of defendant's bench trial for first-degree theft, ORS 164.055, and second-degree robbery, ORS 164.405, defendant argued that the state was required to prove that defendant had had the intent to permanently deprive the bank of its money, and that the state had failed do so. The trial court concluded that the state only needed to prove that defendant had exercised control over the money, and it found defendant guilty except for insanity. Defendant appeals, contending that the court applied an incorrect legal standard in finding him guilty. *Held*: The trial court erred in concluding that theft merely required proof that defendant intended to exercise control over the bank's money without considering whether defendant, in exercising that control, intended to cause a permanent or nearly permanent loss to the bank.

Reversed and remanded.

Martin E. Stone, Judge.

Andrew D. Robinson, Deputy Public Defender, argued the cause for appellant. Also on the briefs was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Leigh A. Salmon, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Lagesen, Presiding Judge, and James, Judge, and Kamins, Judge.

LAGESEN, P. J.

Reversed and remanded.

**LAGESEN, P. J.**

Defendant appeals a judgment following a bench trial finding him guilty except for insanity of second-degree robbery, ORS 164.405, and first-degree theft, ORS 164.055, and placing him under the jurisdiction of the Psychiatric Security Review Board. The findings of guilt were based on evidence that defendant, who is mentally ill, obtained money from a credit union teller after passing her a note stating, "I have a bomb. Put the money in the bag." Defendant notes evidence that he engaged in that conduct not for the purpose of stealing the money but, instead, to attract the attention of police in the hopes of obtaining mental health services. He contends that, in view of that evidence of his purpose, there was not sufficient evidence to find that he intended to deprive the credit union of its money permanently, as the state was required to show. Alternatively, defendant contends that the trial court applied the wrong legal standard in convicting him, erroneously omitting to determine whether defendant had the intent to cause the bank a permanent loss. The state responds that neither contention is preserved and that the evidence was sufficient to support any required findings. We agree with the state that defendant's challenge to the legal sufficiency of the evidence is not preserved for our review and reject it for that reason without further discussion. Defendant's other contention, however, is preserved and, ultimately, correct. We therefore reverse and remand.

The relevant facts are not disputed. Defendant suffers from schizoaffective disorder with bipolar symptoms and has a long mental health history. While highly intoxicated, and in the hopes of getting needed mental health treatment by being arrested, he walked into the First Community Credit Union in North Bend, approached a teller, and handed her a note. The note stated, "I have a bomb. Put the money in the bag." She did so, placing $1,413 in the bag. Defendant then walked toward the doors to the bank but did not leave. Instead, he turned around and went into the lobby, sat down, and started smoking a cigarette. He put the bag of money on the chair next to him. Another teller, meanwhile, set off the alarm designed to summon police. When the officers arrived, they entered the bank,

announced their presence, and arrested defendant without incident. He was taken to a hospital for medical evaluation, where it was determined that his blood alcohol content was .217.

Defendant was charged with first-degree theft and second-degree robbery. Because of his mental condition, he was found unfit to proceed and committed to the state hospital for the purpose of restoring his capacity to stand trial. Once his capacity was restored, defendant waived his right to a jury trial and the matter was tried to the court. At the close of the case, defendant's main theory was that he did not commit theft (or the robbery, which required proof that he was committing theft) because the state did not prove that he intended to deprive the credit union of the money in the way required to prove theft because his actions were a "cry for help" rather than an intent to take the credit union's money. Defendant argued:

> "With regard to the intent question, the defense is actually going to start with the theft in the first degree charge—
>
> "＊＊＊＊＊
>
> "＊＊＊ since, as part of the theft, that the State has to prove in this case [defendant] had the intent to deprive. In this case it would be the money in question, which is the subject of the theft. The defense's argument would be that it was not [defendant's] intent to deprive the bank of the money, as [defendant] indicated he—he didn't want the money, but this is a situation where this was essentially, I'm going to use my own terms here, a cry for help.
>
> "As [defendant] indicated, he was trying to get help. There was reference to I believe a few other contacts with law enforcement, Bay Area Hospital, things of that nature, and the defense believes that the facts would actually support that the—there's no intent to commit theft.
>
> "As the video shows, [defendant] did go into the bank, approach the teller, did receive the money based on I believe it was State's Exhibit 10, which was the alleged note in question, but [defendant] turned around, walked back to the door, never left the premises, went over, sat in the chair, put the money on the—on the table next to him, and it sat there.

"[Defendant] indicated that he knew the officers were going to show up. As the video showed, it was about a five- to six-minute timeframe from when [defendant] sat down, put the money on the table, when the officers came in, placed him under arrest without incident and escorted him out. All the money that was taken, I believe it was the $1413, that was all recovered. [Defendant] had no money on his—it was all sitting right there."

Consequently, according to defendant, the state had not shown that he committed either theft or robbery.

In response to that argument, the state argued that, to prove theft, it only needed to show that defendant intended to exercise control over the bank's money, not that defendant intended to deprive the bank of its money for any particular length of time:

"Theft can be accomplished in two different ways. One is to appropriate money to one's self, which includes within that definition the exercise or control over property that's stolen.

"* * * * *

"* * * He clearly didn't have permission to have that money, and when he took possession of that bag, he exercised control over that money. Granted, it was for a short period of time.

"* * * * *

"* * * But this would be similar to a situation of somebody who shoplifts a candy bar and shoves it in their pocket. The question is, is it an accident, or did they intend to leave the store or deprive or appropriate the candy to themselves?

"* * * * *

"The bank, granted, it wasn't for a long period of time, but that was their property which he took and deprived them of it for that short period of time."

The trial court ultimately agreed with the state that it need only show that defendant exercised control over the credit union's money, and intended to do so, not that defendant intended to deprive the credit union of the money for any particular length of time:

"The argument [defense counsel] makes about this would not be a theft because he didn't, you know, leave the credit union with—with the money. He sat at the table with the money. I don't agree. I—I mean, clearly he exercised control over the money. It wasn't his money. It was the credit union's money, more than a thousand dollars, gave the note to the teller. She hands him over the money. He has control over that money, and that constitutes a theft under Oregon law."

Based on that finding and that understanding of the law, the trial court found defendant guilty.

Before us defendant argues, as noted, that the trial court erred in concluding that theft required merely proof that defendant intended to exercise control over the credit union's money for some period of time, no matter how short the period. He contends that theft requires proof, instead, that defendant intended to effect a permanent deprivation of the credit union's money. The state responds that defendant did not preserve the claimed error, and that it is not plain that the court applied the wrong legal standard in finding defendant guilty.

As an initial matter, we reject the state's contention that the issue is not preserved. True, defendant's arguments below were not as refined as they are on appeal. But defendant squarely argued that theft required proof that defendant intended to deprive the credit union of its money, something that was not shown by defendant obtaining the money as part of his attempt to get arrested and in view of the fact that defendant never left with the money. The state, plainly understanding defendant's argument to be that it had to show that defendant intended more than temporary deprivation, responded that it need only show that defendant intended to control the money, even if just for a short period of time. Finally, in explaining its verdict, the trial court accepted the state's control argument, necessarily rejecting defendant's argument about the state needing to demonstrate an intent to cause a nontemporary deprivation.[1] Under those circumstances, the issue about the nature

---

[1] We are appreciative of the trial court's expression on the record of the basis for its ruling on the parties' dispute about the legal standard, and its articulation of the standard it was applying. In doing so, the court not only facilitated our

of the intended deprivation was adequately raised and ruled on, and, consequently, preserved for our review. *See, e.g., State v. Zimmerman*, 309 Or App 447, 451 n 2, 483 P3d 39 (2021) (question of whether trial court applied correct legal standard in bench trial adequately preserved where parties argued the legal question to the trial court and the trial court ruled on it).

As for whether the state could prove that defendant committed theft by a mere showing that defendant intended to exercise control over the credit union's money, without showing that defendant intended to do so in a way that resulted in a permanent deprivation, that is a question of statutory construction, and we review the trial court's ruling for legal error. *State v. Browning*, 282 Or App 1, 2, 386 P3d 192 (2016), *rev den*, 361 Or 311 (2017).

On that question, the legislature has done most of the work for us through its statutory definitions. Theft, by statute, requires proof that the person acts "with intent to deprive another of property or to appropriate property to the person or to a third person." ORS 164.015. As we have explained, "Both 'deprive' and 'appropriate' are defined for the purposes of the theft statutes by ORS 164.005, and each definition refers to an interference with property that is either permanent or so extensive as to deprive the property owner of the major portion of the economic value or benefit of the property." *Browning*, 282 Or App at 6; ORS 164.005(1) (defining "appropriate" to mean to "[e]xercise control over property of another *** *permanently or for so extended a period or under such circumstances as to acquire the major portion of the economic value or benefit of such property*" (emphasis added)); ORS 164.005(2) (defining "deprive" to mean to "[w]ithhold property of another *** permanently or for so extended a period or under such circumstances that the major portion of its economic value or benefit is lost to that person" or "[d]ispose of property in such manner or

---

review process in this case, more importantly, it safeguarded defendant's statutory right to an appeal and complied with its obligations as articulated in our case law and that of the Supreme Court. *See State v. Colby*, 295 Or App 246, 251, 433 P3d 447 (2018) ("[A] court cannot refuse to disclose the legal principles that it has applied in construing the elements necessary to adjudicate guilt, when a defendant properly raises that issue.").

under such circumstances as to render it unlikely that an owner will recover such property"). In other words, theft in Oregon "requires a thief to intend permanent or virtually permanent loss to the owner of the possession and use of property." *State v. Christine*, 193 Or App 800, 809, 93 P3d 82, *rev den*, 337 Or 476 (2004). A person who intends to cause only temporary loss or displacement of possession does not commit theft. *See id*. Consequently, the trial court erred in concluding that theft merely required proof that defendant intended to exercise control over the credit union's money without considering whether defendant, in exercising that control, intended to cause a permanent or nearly permanent loss to the credit union.

The error requires us to reverse and remand. *State v. Massey*, 249 Or App 689, 693-94, 278 P3d 130 (2012), *rev den*, 353 Or 203 (2013) (reversal required in bench trial when trial court applies incorrect legal standard in reaching verdict). Because defendant's robbery conviction is predicated on defendant having committed theft, it too must be reversed and remanded.

Reversed and remanded.