Submitted February 23, 2021, affirmed February 1, petition for review denied July 20, 2023 (371 Or 308)

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

AMBER ELLEN SELLS,
*Defendant-Appellant.*

Josephine County Circuit Court
17CR25302; A171406

524 P3d 517

Defendant appeals a judgment of conviction for murder in the second degree with a firearm, ORS 163.115; ORS 161.610. She asserts that the trial court erred in refusing to consider the impact that her methamphetamine intoxication had on the mental state element of the offense. She argues that the trial court's speaking verdict demonstrated that the court believed voluntary intoxication was not available to negate the mental state required for murder, in direct conflict with ORS 161.125(1), which allows the finder of fact to consider evidence of drug use, dependency, or intoxication, "whenever it is relevant to negat[e] an element of the crime charged." *Held*: The trial court did not err. Although at times the trial court may have improperly used the term "a defense" to mean both a complete defense to the charges (as prohibited by the statute) and a defense theory that negated the mental state (as permitted by the statute), the trial court, in its speaking verdict, expressly considered defendant's evidence of voluntary intoxication before it found that defendant had formed the intent to murder the victim.

Affirmed.

Thomas M. Hull, Judge.

Lindsey Burrows and O'Connor Weber LLC filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Joanna Hershey, Assistant Attorney General, filed the brief for respondent.

Before Mooney, Presiding Judge, and Hellman, Judge, and DeVore, Senior Judge.

HELLMAN, J.

Affirmed.

**HELLMAN, J.**

Defendant appeals a judgment of conviction for murder in the second degree with a firearm, ORS 163.115; ORS 161.610, entered after a trial to the court. On appeal, she asserts that the trial court erred in refusing to consider the impact that her methamphetamine intoxication had on the mental state element of the offense. Specifically, defendant argues that the trial court's speaking verdict demonstrated that the court believed voluntary intoxication was not available to negate the mental state required for murder, in direct conflict with ORS 161.125(1).[1] The state responds that defendant's asserted error is not preserved and that we should not exercise our discretion to review it for plain error. For the reasons explained below, we agree with defendant that the error was preserved. However, we disagree with defendant that the trial court misapplied the law. Accordingly, we affirm.

Because the question in this case involves whether the trial court correctly understood the law, we examine the record in some detail, focusing on the portions of the record that involve the issue of intoxication and its possible relevance to defendant's trial. The relevant facts of this case are undisputed and mostly procedural. Defendant shot and killed the victim while high on methamphetamine. Defendant was arrested and subsequently charged with murder with a firearm, ORS 163.115 and ORS 161.610.[2]

The issue of defendant's voluntary intoxication first arose in defendant's pretrial motion to postpone the trial. One reason trial counsel gave for needing additional time was that he had "secured the services of an expert

---

[1] ORS 161.125(1) provides:

"The use of drugs or controlled substances, dependence on drugs or controlled substances or voluntary intoxication shall not, as such, constitute a defense to a criminal charge, but in any prosecution for an offense, evidence that the defendant used drugs or controlled substances, or was dependent on drugs or controlled substances, or was intoxicated may be offered by the defendant whenever it is relevant to negative an element of the crime charged."

[2] ORS 163.115(1) provides, in relevant part:

"[C]riminal homicide constitutes murder in the second degree *** [w]hen it is committed intentionally[.]"

consultant and likely trial witness *** in connection with the [evidence of defendant's intoxication] as [the evidence] potentially relate[s] to voluntary intoxication and culpable mental state." The state did not object, and the court granted the motion.

The issue next arose in litigation surrounding the state's pretrial motion to exclude lay witness testimony. In a written motion, the state asked the court to "prohibit[] the defendant from offering testimony from lay witnesses that: 1) the defendant suffers from a mental illness; and 2) that the defendant engaged in odd behavior prior to the murder."[3] At the hearing on the motion, defense counsel stated that he wanted to consult an expert to "look at the case in terms of voluntary intoxication and mental state." He requested that the court not rule on the motion until "I know more about what [the expert] might say about voluntary intoxication or the effects—possible combined effects of the psychotic drug and methamphetamine [as well as how] voluntary intoxication potentially relates to defraying [the] intentionality and knowingly [elements of the offense]." He then provided the court with various hypothetical situations in which layperson testimony would be relevant to the defense. The court responded with its own hypothetical stating, "[T]he most direct circumstance would be [a lay witness stating] that I saw her snort or consume[] methamphetamine an hour before [the killing]. I don't see that as a defense." Defense counsel responded, "Voluntary intoxication bears on intent ***[.]"

At trial, defendant admitted that she shot the victim. Her defense was that there was insufficient evidence to conclude beyond a reasonable doubt that she acted with conscious intent to kill the victim, as is required by ORS 163.115. Instead, she argued that she acted recklessly with a conscious disregard for human life and therefore had committed the lesser-included offense of manslaughter.

In advocating for that mental state, defense counsel highlighted the impact of methamphetamine intoxication on defendant's ability to form intent. During cross-examination

---

[3] The state also filed a motion for a psychiatric evaluation of defendant. Defendant stipulated to that motion.

of Dr. Penumetcha, the state's expert psychiatrist, the parties and the court engaged in the following colloquy:

"[DEFENSE COUNSEL]: All right. Dr. Penumetcha, you testified quite clearly for [the state] that * * * there was nothing to bar [defendant] from forming the intent to kill?

"[DR. PENUMETCHA]: Psychiatrically, yes.

"[DEFENSE COUNSEL]: Thank you. Good qualification there. Can substance use or abuse prevent or inhibit the forming of that intent?

"[DR. PENUMETCHA]: No.

"[DEFENSE COUNSEL]: They cannot?

"[DR. PENUMETCHA]: Well, substance use, I don't think it will affect an individual's ability to formulate an intent. I should have been more clear. Sorry.

"[DEFENSE COUNSEL]: Okay. Now, I want to make sure I have this. So it is your clinical determination whether or not it corresponds with current Oregon law, it is your clinical statement today that the use or abuse of substances cannot inhibit a person's capacity to form intent?

"[DR. PENUMETCHA]: So I think if—we're generalizing a bit here, when someone uses a substance and becomes psychotic, they can be unable to formulate an intent. I'm being more narrow and specific that substance use in itself, meaning that if someone takes methamphetamine, it does not affect their ability to formulate an intent.

"[DEFENSE COUNSEL]: Does it prevent their capacity to form an intent?

"[DR. PENUMETCHA]: No, it doesn't affect their—

"[DEFENSE COUNSEL]: Can it inhibit their capacity to form intent?

"[DR. PENUMETCHA]: That's—

"[DEFENSE COUNSEL]: Can it mar their capacity to form intent?

"[DR. PENUMETCHA]: No.

"[DEFENSE COUNSEL]: How about alcohol?

"[PROSECUTOR]: Objection, relevance.

"THE COURT:   I'm not sure what you're trying to compare.

"[DEFENSE COUNSEL]:   All right. I'll go another direction. Substances—

"THE COURT:   And what's—

"[DEFENSE COUNSEL]:   —of any kind inclu—

"THE COURT:   What's ringing in my head is your first question about that you're asking—

"[DEFENSE COUNSEL]:   Well, I'm trying to find a way to—

"THE COURT:   —with regard to the fact that it's not a defense. But you go right ahead and keep asking. Go ahead.

"[DEFENSE COUNSEL]:   Well, I mean, there is—

"THE COURT:   Well, I'm not asking you to explain it for me—

"[DEFENSE COUNSEL]:   Sure. Yes, Judge.

"THE COURT:   I'm just telling you—

"[DEFENSE COUNSEL]:   We'll argue about that, yes.

"THE COURT:   —that I'm thinking about that and I'm sure it'll become an argument. Go ahead."

During closing argument, defense counsel asked the court to consider the effect of defendant's intoxication on the *mens rea* element of the offense.

"We are pointing you to, however, the existence of mental health issues, including personality disorders, methamphetamine, her history as they contribute to whether or not she formed the intent, period, Judge, necessary for murder. In conjunction with the voluntary intoxication defense in which you are able to take *** into consideration as to whether or not she had a qualifying disorder for purposes of intent or lack thereof."

Defense counsel then pointed out the inconsistency between Penumetcha's testimony, and the standard jury instruction which permits a jury to consider a person's voluntary intoxication in evaluating the defendant's state of mind:

"But when pressed, [Dr. Penumetcha] insisted that no amount of intoxicants, here meth, could ever impact or

limit the person's capacity to form intent. To mitigate it, potentially to recklessness. That's contrary to the standard jury instruction on voluntary intoxication, which permits, in cases of intentional or knowing, not reckless to start * * * permits the factfinder to take into consideration—specifically take into consideration voluntary intoxication as it might rebut the finding of the appropriate culpable mental state, here intent. And that's one of the standard jury instructions I'd recall to the Court's attention. You know about it, of course.

"* * * * *

"We question whether Dr. Penumetcha considered or was even aware of the meaning of intent as applied to the law and degrees of criminal homicide."

To illustrate his point, defense counsel offered the following hypothetical:

"[H]ypothetically, we have some guys—some fellows drinking up on BLM- BLM lands, shooting cans and just partying up there. Intoxicated. One guy's pretty sure of his ability with a gun, decides he wants to scare another fellow and make him jump out of his shorts. Pops off a shot in his general direction, intending to fire in his general direction, but intending to scare him and have a gag, a laugh with the other guys. Instead, it catches the guy in the head and he's dead. That's not murder, Judge, that's manslaughter."

The state addressed the issue during its closing argument:

"Meth-induced psychosis is no defense. Whether or not she would have made this choice sober has no bearing on the decision. If the meth caused her to do it, if the meth made her decide to intentionally take [the victim's] life, she is guilty of murder. It doesn't matter that she would not have done this when she was sober. It is not an excuse, and for good reason. We don't want people killing, we don't want people hurting, we don't want people committing crimes and then being able to fall back on the excuse of voluntary intoxication. If you decide to kill because you've taken too much meth, you are still as guilty of murder as if you made that choice stone-cold sober. And for good reason.

"If you get high on meth and because you're high on meth you take a life, you have assumed that risk, and you

must bear the consequences of that choice. If you are high on meth and decide to kill, you have no defense."

The trial court then entered a speaking verdict in which it concluded beyond a reasonable doubt that defendant was guilty of murder. The court explained:

"[I]'ll start with psychological issues that [defendant] did or didn't have. The psychiatrist made it clear that she is able to form an intent, which I think she did. We know that she doesn't have a mental disease or defect that would affect her ability. I also note that there could be some psychosis because of her drug use and I appreciate that. I also understand that voluntary intoxication does not and is not a defense.

"* * * * *

"Beyond that, as I indicated—as [the state] indicated yesterday that it's not a defense. Where that comes in and where it can have an impact, for example, was the two drunken folks [and] one tries to shoot somebody close or comes close and actually has an accident. I think that's an accident. I don't think that's showing—as long as that individual had an intent to kill, I think that's all that's necessary. And they didn't in your * * * example[.]"

## PRESERVATION

We first address the state's contention that defendant's argument is not preserved. The state argues that to preserve the argument, defense counsel was required to object to the trial court's speaking verdict after it was issued. We disagree.

"[T]he primary purposes of the preservation rule are to allow the trial court to consider a contention and correct any error, to allow the opposing party an opportunity to respond to a contention, and to foster a full development of the record." *State v. Clemente-Perez*, 357 Or 745, 752, 359 P3d 232 (2015). The Supreme Court, however, has cautioned that "problems * * * may arise if the preservation onion is sliced too thinly." *State v. Amaya*, 336 Or 616, 629, 89 P3d 1163 (2004). Thus, "[p]recisely what is required [for preservation] may vary with the individual circumstances of each case." *State v. K. J. B.*, 362 Or 777, 790, 416 P3d 291 (2018).

"In some circumstances, a fairly abbreviated short-hand reference may suffice to put the trial court and the parties on notice of the nature of the argument." *Id.* Nevertheless, to be adequately preserved, the reference "must be used in a way and context in which the other parties and the court would understand that the word or phrase refers to a particular legal or factual argument, and also would understand from that single reference the essential contours of the full argument." *State v. Haynes*, 352 Or 321, 335, 284 P3d 473 (2012).

An objection is not the only method by which a defendant may preserve an argument for appeal. *See, e.g.*, *State v. Sorrow*, 312 Or App 40, 44-45, 489 P3d 1127 (2021) (explaining that where the defendant raises an issue, the state responds, and the trial court, in its verdict, offers an explanation as to why it agreed with the state, the issue is "adequately raised and ruled on, and, consequently, preserved"); *State v. Nicholson*, 282 Or App 51, 54-55, 383 P3d 977 (2016) (concluding an objection by defense counsel is not necessary for preservation when defense counsel raised the issue in closing argument, the prosecutor understood and engaged with that issue, and the court endorsed the state's legal position). *See also*, *State v. Satterfield*, 274 Or App 756, 759, 362 P3d 728 (2015), *rev den*, 358 Or 794 (2016) (concluding that where defense counsel's argument throughout trial was consistent with his argument on appeal and where his closing argument "[drew] the court's attention to the correct rule," the argument was preserved). Additionally, in a bench trial, a defendant may preserve an issue by submitting jury instructions to the court and allowing the court "to instruct itself on the correct version of the law, thereby creating a record that allows us to review whether the court applied the correct principles of law in reaching its verdict." *State v. Colby*, 295 Or App 246, 252, 433 P3d 447 (2018).

Here, defense counsel repeatedly raised the issue of voluntary intoxication as it relates to the mental state element of the offense. The state responded to that issue during its closing argument, and the trial court addressed the issue during its speaking verdict. That sequence of events, alone, would be sufficient to preserve defendant's argument for

appeal. *See Nicholson*, 282 Or App at 54-55; *Sorrow*, 312 Or App at 44-45.

In addition, here, like in *Satterfield*, 274 Or App at 759, defense counsel's argument throughout trial was consistent with his argument on appeal, and defense counsel called the court's attention to the applicable statute during closing argument, noting that Penumetcha's testimony was "contrary to the standard jury instruction on voluntary intoxication, which permits, \*\*\* the factfinder to take into consideration \*\*\* voluntary intoxication as it might rebut the finding of the appropriate culpable mental state, here intent."

We conclude that the purposes of preservation were met in this case. Although some of defense counsel's references to the issue could be characterized as abbreviated, we cannot say that "other parties and the court would [not] understand" that defense counsel was "refer[ing] to a particular legal or factual argument." *Haynes*, 352 Or at 335. Nor can we say that the state was "taken by surprise, misled, or denied opportunities to meet an argument." *Davis v. O'Brien,* 320 Or 729, 737, 891 P2d 1307 (1995).

Because we conclude that defendant's argument is preserved, we need not exercise our discretion to review for plain error. Instead, because the facts relevant to the legal issue that we address are undisputed, we review the trial court's application of law to the facts for legal error. *State v. Ehly*, 317 Or 66, 75, 854 P2d 421 (1993).

## LEGAL ANALYSIS

Defendant argues that the trial court misapplied ORS 161.125(1) when it summarily concluded that "voluntary intoxication is not a defense" and refused to consider the broader issue of the effect of voluntary intoxication on defendant's ability to form intent. Under ORS 161.125(1),

"[t]he use of drugs or controlled substances, dependence on drugs or controlled substances or voluntary intoxication shall not, as such, constitute a defense to a criminal charge, but in any prosecution for an offense, evidence that the defendant used drugs or controlled substances, or was dependent on drugs or controlled substances, or was

intoxicated may be offered by the defendant whenever it is relevant to negative an element of the crime charged."

The trial court was thus correct that voluntary intoxication is not "a defense" as that term is defined in the statute. But the inquiry does not stop there. ORS 161.125(1) states that voluntary intoxication "shall not, *as such*, constitute a defense to a criminal charge[.]" (Emphasis added.) That phrase must be read in connection with the next part of the sentence which states that evidence of voluntary intoxication "may be offered *** whenever it is relevant to negat[e] an element of the crime charged." *Id.* The latter half of the sentence establishes that evidence of voluntary intoxication *can* be considered to determine the defendant's mental state at the time of an offense. Practically speaking, then, voluntary intoxication is not "a defense" that would allow a defendant avoid responsibility for criminal conduct altogether. However, it is potentially relevant to the defendant's state of mind and could lead to a conviction for a crime such as manslaughter, which reflects a lesser degree of criminal culpability than intentional murder.

The concern in this case is that the trial court may have improperly used the term "a defense" to mean both a complete defense to the charges (as prohibited by the statute) and a defense theory that negated the mental state (as permitted by the statute).

Indeed, there were several times in the pretrial and trial proceedings where the trial court appeared to conflate both parts of the statute. For example, when the issue of defendant's voluntary intoxication arose during a pretrial hearing on the state's motion to exclude lay testimony, the trial court stated, "I don't see that as a defense." When defense counsel reminded the court that "voluntary intoxication bears on intent," the court responded, "I guess I'm more—it may be a rhetorical question for you to think about whether somebody can use that as a defense."

In addition, during cross-examination, the state's expert testified that when someone uses substances "they can be unable to formulate intent," but that substance use, in and of itself, does not affect an individual's ability to form intent or inhibit their capacity to form intent. The state

objected, citing relevance. In sustaining the objection, the trial court cautioned defense counsel against continuing to explore that issue, explaining that "What's ringing in my head is *** the fact that it's not a defense."

Finally, in its speaking verdict, the trial court referred favorably to the state's closing argument that voluntary intoxication is not "a defense." However, based on its characterization of defense counsel's hypothetical in that context, the trial court seemingly did not recognize that defense counsel had offered evidence of voluntary intoxication to lessen, not eliminate, criminal culpability.

In those examples, the trial court responded to defendant's arguments about a lack of intent with a comment about the unavailability of "a defense." Those comments could be read as the trial court eliminating the possibility that voluntary intoxication could be used to lessen, but not eliminate, defendant's criminal culpability. That, of course, would be incorrect under ORS 161.125(1).

If those were the only statements in the record regarding the trial court's engagement with the voluntary intoxication issue, we may very well have agreed with defendant that the trial court misapplied the law. But they are not the only statements. When it announced its verdict, the trial court explicitly found that defendant had formed the required intent, stating "the psychiatrist made it clear that she is able to form an intent, *which I think she did.*" (Emphasis added.) The trial court also indicated that it had considered the evidence of defendant's voluntary intoxication, stating that "there could be some psychosis because of her drug use and I appreciate that." In light of those clear statements in the speaking verdict, we do not read the trial court's next statement that "voluntary intoxication does not and is not a defense" as a misstatement of the law. Although the trial court may have been focused on the first part of the statute for most of the trial, in announcing its verdict it did consider defendant's evidence of voluntary intoxication before finding that defendant formed the intent to murder the victim.

Affirmed.