No. 397                     June 12, 2024                     187

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

MANUEL ELISHA NORTH,
*Defendant-Appellant.*

Marion County Circuit Court
20CR58996; A178920

Courtland Geyer, Judge.

Argued and submitted May 14, 2024.

Zachary J. Stern argued the cause for appellant. Also on the briefs was Zachary J. Stern, PC.

Doug M. Petrina, Assistant Attorney General, filed the brief for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Tookey, Presiding Judge, Egan, Judge, and Kamins, Judge.

TOOKEY, P. J.

Affirmed.

**TOOKEY, P. J.**

Defendant appeals his conviction for second degree murder with a firearm, seeking a new trial.[1] The charge arose out of an incident in which defendant shot and killed the driver of another vehicle after a driving confrontation. In seven assignments of error, defendant challenges four rulings of the trial court: the court's admission of other-acts evidence to show defendant's propensity to be the initiator of aggression; the sufficiency of the evidence in support of the trial court's giving of an instruction on "provocation"; the court's exclusion of evidence relevant to show the victim's violent character as it pertains to who was the initial aggressor; and the failure of court to either *sua sponte* strike or grant a mistrial to remedy alleged prosecutorial misconduct during closing arguments that defendant asserts gave rise to plain error.

ORS 161.215(1) bars reliance on self-defense when the defendant either provoked the victim to act or was the initial aggressor. The verdict form submitted to the jury segregated those theories, and the jury rejected defendant's self-defense argument on both theories. We reject defendant's assignments relating to evidence bearing on who was the initial aggressor, because we conclude that our determination on the court's delivery of a jury instruction on provocation, which was supported by the evidence, renders any error as to the initial-aggressor issue harmless. And we conclude that the court did not err in other respects and therefore affirm defendant's conviction.

We summarize the relevant facts as they bear on each assignment of error. As a general overview, defendant and the victim engaged in a confrontation as they were driving in separate vehicles on Interstate Highway 5 and through Salem. After pulling over behind the victim's car, defendant and his passenger got out of their car and stood behind the car doors, waiting. The victim came out of his car and walked toward defendant with his arms raised in

---

[1] Defendant was charged with second-degree murder with a firearm, first-degree bias, and unlawful use of a weapon. The unlawful use of a weapon charge was dismissed before trial, and the jury acquitted defendant on the first-degree bias charge.

a questioning motion, asking, "What the fuck, why are you following me?" Defendant fired two shots that killed the victim. There is evidence that, at the moment defendant shot him, the victim was holding a gun in his hand and had partially raised it.

At trial, defendant's theory was that he shot the victim in self-defense. *See* ORS 161.209 (self-defense); ORS 161.219 (use of deadly physical force). The state responded that self-defense was not available to defendant, because defendant had either provoked the victim's alleged threatening behavior, to which defendant then responded, or was the initial aggressor. *See* ORS 161.215(1) (providing that a person "is not justified in using physical force upon another person" when the person either provoked the victim to act or was the initial aggressor). Over defendant's objection, the trial court gave Uniform Criminal Jury Instruction (UCrJI) 1109, which instructs the jury on the provocation limitation of ORS 161.215(1):[2]

> "The defendant is not justified in using physical force on another person if he provoked the use of unlawful physical force by that other person with the intent to cause physical injury or death to the other person."

We first address defendant's second assignment of error, in which he challenges the giving of the instruction relating to provocation, contending that the evidence at trial was insufficient to support it. We will then address defendant's contentions, raised in his first and third assignments, relating to the initial aggressor issue.

Defendant does not contest the legal correctness of the provocation instruction and acknowledges that there is evidence that he provoked the victim "in the colloquial sense." But he argues that the evidence of provocation was not legally sufficient, for purposes of ORS 161.215(1), because it does not permit a finding that defendant acted with the

---

[2] ORS 161.215(1) provides, in part:

"[A person is not justified in using physical force upon another person if:

"(a) With intent to cause physical injury or death to another person, the person *provokes the use of unlawful physical force* by that person [or]

"(b) The person is the initial aggressor[.]"

(Emphases added.)

specific intent required by ORS 161.215(1)(a) to goad the victim into threatening violence so that defendant could, in turn, cause him physical injury and claim self-defense.

Defendant is correct that the asserted provocation must be made with the intention of causing the victim to use physical force so that the defendant could, in turn, respond with physical force and then claim self-defense. *State v. Longoria*, 300 Or App 495, 498, 454 P3d 813 (2019), *rev'd on other grounds*, 366 Or 549, 466 P3d 60 (2020) ("[T]he provocation limitation on self-defense applies when a person provokes another person to use physical force so as to justify responding with physical force."). But contrary to defendant's contention, we conclude that the evidence *was* sufficient to allow an inference by the factfinder that defendant's provocation was for the purpose of goading the victim into using force so that defendant could then respond with force.

In reviewing the trial court's ruling for legal error, we view the evidence in the light most favorable to the state, as the party that requested the instruction. *State v. Daly*, 308 Or App 74, 79-80, 479 P3d 335 (2020) (citing *State v. Payne*, 366 Or 588, 607, 468 P3d 445 (2020)). The jury had before it evidence that defendant, angered by the victim's driving, swerved his car into the victim's lane, forcing the victim to take evasive action; repeatedly directed racial slurs at the victim; responded to the victim's statement, "I'm not a fighter," by displaying a gun and stating, "I'm not a fighter either, I'm a shooter"; and chased the victim down and pulled his car up behind the victim's car when the victim pulled over. That course of conduct continued with defendant getting out of his car and standing behind his car door holding a gun and waiting for the victim to get out of his car and approach. The jury could infer from that evidence that defendant wanted a confrontation with the victim.

Additionally, the jury could find that defendant acted to entice the victim to use force against him, with the intention of responding by shooting the victim and justifying the shooting as self-defense. That inference is supported by defendant's earlier statement to the victim that he was "a shooter." And it is also supported by evidence from which the jury could infer that defendant was pointing a gun at

the victim as he stood behind his car door and the victim approached. The jury could also find that the victim in fact drew a gun in response to seeing defendant's weapon. We conclude that the evidence was sufficient on provocation and that the trial court did not err in giving the instruction.

We turn to defendant's first assignment of error, in which he challenges the trial court's admission of evidence in the form of testimony describing defendant's prior confrontations with drivers whom he perceived to be driving poorly, which the state sought to admit in order to show that defendant was the initial aggressor here, to counter defendant's contention that that he acted in self-defense. *See* ORS 161.215(1)(b) (barring initial aggressor from raising self-defense). The court admitted the evidence understanding that it would show propensity but concluded that it was relevant and admissible under OEC 404(4), and withstood balancing under OEC 403. The court instructed the jury to consider that evidence "only for what bearing, if any, it may have on the determination of who the initial aggressor was." The court also instructed the jury to notify it if the jury could not follow that instruction, stating that following the instruction was "vital to a fair proceeding."

Having rejected defendant's second assignment of error, relating to provocation, we conclude for the following reason that any error in admitting the propensity evidence was harmless. *See* OEC 103(1)(b) ("Evidential error is not presumed to be prejudicial. Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected."). The jury rejected defendant's self-defense argument on two independent legal grounds—provocation and initial aggressor. The jury's finding of provocation independently supported its rejection of defendant's self-defense theory. Thus, even assuming that the court erred in admitting the propensity evidence, an issue we do not decide, the error was harmless if it did not affect the jury's assessment of provocation. And we conclude that it did not. As noted, the court instructed the jury that (1) the propensity evidence could be considered "only for what bearing, if any, it may have on the determination of who the initial aggressor was," and (2) if the jury could not follow

that instruction, it was to notify the court, as following the instruction was "vital to a fair proceeding." Defendant does not identify, and we do not perceive, any reason to believe that the jury failed to follow those instructions. *See State v. Smith*, 310 Or 1, 26, 791 P2d 836 (1990) (The jury is presumed to have followed those instructions, "absent an overwhelming probability that they would be unable to do so."). Accordingly, we conclude that any error in admitting propensity evidence to show that defendant was the initial aggressor had little likelihood of affecting the jury's reasoning regarding provocation. *See State v. Davis*, 336 Or 19, 28, 32, 77 P3d 1111 (2003) (question for harmlessness is whether there is little likelihood that the error affected the verdict). Thus, we need not, and do not, reach the merits of defendant's first assignment of error.

In his third assignment of error, defendant contends that the trial court erred in excluding evidence of the victim's violent character, as would be admissible under OEC 404(2)(b):

> "Evidence of a person's character is not admissible for the purpose of proving that the person acted in conformity therewith on a particular occasion, except:
>
> "(a)  Evidence of a pertinent trait of character offered by an accused, or by the prosecution to rebut the same;
>
> "(b)  Evidence of a *pertinent trait of character of the victim of the crime offered by an accused*, or by the prosecution to rebut the same or evidence of a character trait of peacefulness of the victim offered by the prosecution to rebut evidence that the victim was the first aggressor[.]"

(Emphasis added.) Defendant sought to introduce opinion and reputation evidence concerning the victim's violent character, as it pertained to the initial-aggressor issue. The trial court ruled that the evidence would not be admitted, because defendant was required to make, but had not provided, an offer of proof that he was aware of the victim's violent character.

The state concedes, and we agree, that the trial court's rationale was incorrect and that, under OEC 404(2)(b),

opinion or reputation evidence that the victim was aggressive or violent was admissible to prove that the victim acted in conformity with that character. *State v. Lotches*, 331 Or 455, 489, 17 P3d 1045 (2000) ("Under OEC 404(2)(b), evidence of a pertinent character trait of the victim of a crime, offered by an accused, is admissible for the purpose of proving that the victim acted in conformity therewith."). But the state contends that the trial court's ruling should nonetheless be affirmed, because defendant failed to make a sufficient offer of proof on that theory. *See* OEC 103(1)(b) (error may not be based on a ruling excluding evidence unless "the substance of the evidence was made known to the court by offer or was apparent from the context within which questions were asked."); *State v. Affeld*, 307 Or 125, 128, 764 P2d 220 (1988) ("Normally, an offer of proof is required to preserve error when a trial court excludes testimony."). We have said that the offer of proof "must contain only admissible evidence," and that if any of it is not admissible, the trial court does not commit error by excluding the offer in its entirety. *State v. Ryel*, 182 Or App 423, 434-35, 51 P3d 8 (2002), *rev den*, 335 Or 255 (2003). Defendant responds that his offer of proof was sufficient.

We need not address the merits of the offer-of-proof issue. That is because we conclude that, even assuming, without deciding, that the trial court erred in concluding that the offer of proof was insufficient, the trial court's error was harmless. *See* OEC 103(1)(b) ("Evidential error is not presumed to be prejudicial. Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected."). As noted, the evidence was offered only as it pertained to the initial-aggressor issue. *See* ORS 161.215(1)(b) (barring initial aggressor from raising self-defense). And as we have noted, the jury rejected defendant's self-defense argument on two independent legal grounds—provocation and initial aggressor. The jury's finding of provocation independently supported its rejection of defendant's self-defense theory. Thus, even assuming that the court erred in determining that defendant's offer of proof was insufficient as to the character evidence pertaining to who was the initial aggressor, an issue we do not decide, the error was harmless if it did not affect the jury's assessment of provocation. And we conclude that

it did not. The question whether defendant was the initial aggressor was not necessary to the state's burden to disprove self-defense, and any error relating to the exclusion of defendant's evidence about the victim's violent character could not have affected the jury's verdict.

In his fourth through seventh assignments, defendant asserts plain error by the trial court in failing to intervene *sua sponte*, by either declaring a mistrial or providing curative instructions, to correct asserted misstatements by the prosecutor in closing argument. Defendant's first argument concerns the prosecutor's reference to blood spatters on the back of the driver's side of the victim's car. He contends that the prosecutor's comments referenced facts not in evidence relating to the presence of blood on the car. We analyze defendant's contention asserting plain error through prosecutorial misconduct under the Supreme Court's template set out in *State v. Chitwood*, 370 Or 305, 312-14, 317, 518 P3d 903 (2022) (holding that, in the unique context of plain error review of a prosecutor's improper statements, statements are "legal error," so as to constitute plain error, if they were so prejudicial that an instruction to disregard them would not have been sufficiently curative to assure the court, in its consideration of all the circumstances, that the defendant received a fair trial). We have reviewed the record and agree with the state that the prosecutor's remarks were not based on facts not in evidence and were not improper, and that, therefore, there was no error, let alone plain error, in failing to intervene.

Defendant's second *Chitwood* argument relates to a comment by the prosecutor during closing argument, after reading to the jury the statutory text of the provocation and initial aggressor limitations, that the limitations ask "simply who started it?"[3] The prosecutor repeated that summary,

---

[3] The comment came in the context of the prosecutor's summary of self-defense and its limitations:

"[T]here's no doubt the defendant killed him, there's no doubt the defendant intentionally took the life of Herman Graham. And he's claiming self-defense, and you're going to hear in the course of this trial and certainly in the time when the judge gives you instructions that self-defense is a right we all have, we can all defend ourselves against the unlawful use of force, we can defend others from the unlawful use of force, but that right is not absolute, it does not apply to every person every single time. There are times when it doesn't apply, specifically if you provoke the incident, if you provoke the unlawful violent act

telling the jury, "if you provoke the incident or you're the initial aggressor, you're not entitled to self-defense and that's because you started it." In defendant's view, the prosecutor's comments were a generalization that, by suggesting it was only a question of "who started it," neglected to describe the nuances of the provocation and initial-aggressor limitations and thereby misled the jury.

We agree with defendant that, in isolation, the comment was a generalization of the self-defense limitations. But the jury did not hear it in isolation. The prosecutor recited to the jury the statutory definitions of the provocation and initial aggressor limitations.[4] The prosecutor also told the jury that the court would instruct the jury on the law and the elements of the offense and self-defense. Indeed, the court did correctly instruct jury on the law of self-defense, including on the nuances of the provocation and initial-aggressor limitations. The jury is presumed to have followed those instructions, "absent an overwhelming probability that they would be unable to do so." *Smith*, 310 Or at 26. We conclude that the prosecutor's comments were not improper and did not mislead the jury and, therefore, that the trial court's failure to *sua sponte* take remedial action by ordering a mistrial was not plain error.

Affirmed.

---

with the intent to cause physical injury or death to another, you can't claim self-defense. It is not a legally valid defense for you because you started it. Or if you are the initial aggressor, again if you're the one who starts it, you can't claim self-defense. The question in this case is very simply who started it, because when you have an intentional killing and you have a claim of self-defense and you determine that self-defense goes away, what you're left with is an intentional killing, and intentionally taking the life of another human being is murder. That's what the defendant did, he murdered Herman Graham."

[4] The prosecutor acknowledged that he had imprecisely described the statutory definitions, and then fully explained both the provocation and initial-aggressor limitations:

"I've been sort of free-wheeling on this, but I want to read the definitions to you exactly because nothing I say is law, nothing I say is evidence. The judge will give you the law and you've heard the evidence, but provocation, just to get it exactly right, a defendant is not justified in using physical force on another person if he provoked the use of unlawful physical force by that person with the intent to cause physical injury or death to the other person. In regards to initial aggressor, ordinarily a person is not justified in using physical force on another person if he was the aggressor. So that's the rule. A person is not justified in using physical force on another if he was the initial aggressor."