No. 831 November 20, 2024 291

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

CESAR DIAZ ARENA,
*Defendant-Appellant.*

Multnomah County Circuit Court
21CR02182; A180392

Shelley D. Russell, Judge.

Submitted September 5, 2024.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Zachary Lovett Mazer, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Jordan R. Silk, Assistant Attorney General, filed the brief for respondent.

Before Aoyagi, Presiding Judge, Egan, Judge, and Joyce, Judge.

JOYCE, J.

Reversed and remanded.

Aoyagi, P. J., dissenting.

**JOYCE, J.**

Defendant appeals from his convictions for multiple sexual offenses. On appeal, he raises six assignments of error. We conclude that defendant's first and second claims of error warrant reversal. That conclusion obviates the need to resolve defendant's remaining claims of error, each of which arises in an unpreserved posture, because we cannot say with confidence that they are likely to arise on remand.

Defendant's stepdaughter, C, accused defendant of sexual abuse beginning when she was 10 and later escalating to rape. C disclosed defendant's abuse to her sister, T, who then told their mother. C's mother did not believe C's allegations. DHS became involved and placed both T and C in foster care. C's mother told a caseworker that she would leave T and C in foster care until C recanted her allegations, which C ultimately did. C continued to deny that any abuse had occurred, including at trial.

During trial, the state presented evidence that the alleged abuse occurred in C's bedroom, where defendant often slept. That bedroom was adjacent to others, and at trial, defendant offered testimony of other family members—C's mother, C's sister T, and defendant's brother—all explaining that, although defendant slept in the bedroom with C, the door was always open, and C's mother walked past it multiple times a night. Other people were also living in the house, but none of them testified. In closing argument, defendant argued that it was impossible for the abuse to have happened as many times as C said because someone walking past the open bedroom door would have observed it.

During the prosecutor's rebuttal argument, the prosecutor made several statements that form the basis for defendant's first and second claims of error:

"It's not a coincidence that the only people who testify for the Defense *just happen to be the people strongly biased in favor of getting the Defendant out of trouble.*

"So we heard about a couple of other people. *And it should strike you as a bit odd if the entire defense relies on only people with a strong relationship connection to the Defendant when there are other people who could testify who*

*aren't in the same position of bias. What about the room-mates who lived in the house for years?*

"One of them still lives with Roberto who would be able to come in. And he may still have an affinity towards the Defendant, but it's not an affinity of familial relation. He doesn't owe anything to the Defendant like the other witnesses do who are economically and emotionally connected to him.

"*There's a reason why you didn't hear from the room-mates because the story is made up about the doors always being open, about Mom always walking by.*

"You also didn't hear from Jocelyn.

"It would be—and I want to be as clear as possible about this. It's my burden of proof to prove the case beyond a reasonable doubt. [Defense counsel] has no burden of proof at all. So I do not want you, and I—it would be inappropriate for you to say, Hey, he didn't call those witnesses, so, you know, I'm going to punish him in terms of my evaluation. *But it is fair to say if there are witnesses who would be more impartial and neutral that could be called, and they weren't, that there's a reason for that.*"

Defendant did not object. On appeal, however, he contends that the trial court should have *sua sponte* declared a mistrial because the prosecutor's statements (italicized above) constituted impermissible burden shifting by suggesting that defendant should have called witnesses in support of his theory of defense. *See State v. Spieler*, 269 Or App 623, 641-42, 346 P3d 549 (2015) (explaining that the prosecutor cannot make comments that may reasonably cause the factfinder to "misapprehend and misallocate the burden of proof"). For its part, the state argues that the prosecutor's statements were proper in light of the defense that defendant had raised and the witnesses that he called.

Because defendant's claims of error arise in a plain-error posture, they are governed by the familiar three-part test for determining whether the error is, in the first instance, plain. An error is "plain" when (1) it is one of law; (2) it is obvious and not reasonably in dispute; and (3) it appears on the record. *State v. Chitwood*, 370 Or 305, 314, 518 P3d 903 (2022). No party disputes that the claimed

error is apparent on the record, thus satisfying the third prong. Thus, we must consider whether the error is one of law, a standard that is met when "the statements were so prejudicial that, if defendant had objected and moved for a mistrial, the trial court would have committed legal error had it denied the motion." *Id.* at 321.[1] If so, then we must also determine whether it is obvious and not reasonably in dispute that the prosecutor's statements "'were so prejudicial as to have denied defendant a fair trial.'" *Id.* at 312 (quoting *State v. Montez*, 324 Or 343, 357, 927 P2d 64 (1996), *cert den*, 520 US 1233 (1997)).

We recently addressed the scope of when a prosecutor may permissibly comment on a defendant's failure to present evidence in *State v. Strain*, 332 Or App 79, 82, 548 P3d 169, *rev allowed*, 372 Or 763 (2024). There, one of the state's witnesses testified that the victim had told her about the alleged assaults. *Id.* at 81. During closing argument, the defendant pointed out that there were no text messages between the victim and her friend about that conversation. *Id.* In rebuttal, the prosecutor responded by observing that the defendant never cross-examined the witness about her testimony. *Id.* The prosecutor also argued that if the victim had made any statements to the investigating officers or to the grand jury that were inconsistent with her trial testimony, the defendant could have elicited as much in cross examination. *Id.* On appeal, the defendant argued that those arguments were improper because they suggested that the defendant had some burden to provide evidence when he in fact did not. *Id.* at 80.

We agreed with the defendant. *Id.* at 83. We began by accepting the state's acknowledgment that the prosecutor's statements did not fall within the two types of permissible argument that we described in *State v. Mayo*, 303 Or App 525, 532, 465 P3d 267 (2020), where we observed that a prosecutor may comment on a defendant's failure to present evidence (1) of affirmative defenses, and (2) when the defense has raised an issue on which the defendant bears the initial burden of production but fails to present any evidence. *Strain*, 332 Or App at 81-82. In *Strain*, the

---

[1] In *Chitwood*, the court framed the error not as a trial court's failure to *sua sponte* declare a mistrial but rather one of prosecutorial error. 370 Or at 324-25. We likewise frame the claim of error in that manner.

statements were neither comments on the defendant's fail-
ure to present evidence on an affirmative defense nor were
they relevant to an issue to which the defendant bore the
initial burden of production. *Id.*

We also concluded that the comments were not
proper under *Spieler*, where we explained that a prosecu-
tor may be permitted to comment on a defendant's failure
to present evidence when a defendant makes an argument
"'that the state has failed to present certain evidence—with
the implication that such evidence would have supported the
defense or undermined the state's case.'" *Strain*, 332 Or App
at 82 (citing and quoting *Spieler*, 269 Or App at 641-42). In
such a situation, we explained, the prosecutor can respond
by noting that "the defense has the ability to produce" that
evidence. *Spieler*, 269 Or App at 642).[2]

In *Strain*, we concluded that the prosecutor's state-
ments targeted the defendant's failure to cross-examine
the victim and her friend and not—as may have been per-
missible under *Spieler*—the defendant's failure to present
additional evidence about their communications. *Strain*, 332
Or App at 82.

So framed, we turn to consider whether the prose-
cutor's arguments here were permissible. Beginning with
the prosecutor's argument that defendant's witnesses were
biased, we conclude that it is not obvious that that argument
was improper. In closing arguments to the jury, counsel has
"'a large degree of freedom' to comment on the evidence
submitted and urge the jury to draw any and all legitimate
inferences from that evidence." *Cler v. Providence Health
System-Oregon*, 349 Or 481, 487-88, 245 P3d 642 (2010)
(quoting *Huber v. Miller*, 41 Or 103, 115, 68 P 400 (1902)).
For example, counsel may argue that the jury should infer
that a witness is or is not credible based on the evidence
in the record. *State v. Montgomery*, 327 Or App 655, 660,
536 P3d 627 (2023), *rev den*, 371 Or 825 (2024). Given that
wide latitude, and in the absence of any comment by the

___

[2] We appreciate that we have not been entirely consistent in acknowledging
that type of comment discussed in *Spieler*. To the extent that there is some ten-
sion in our case law, we do not need to resolve that tension here given that, as
we describe below, the prosecutor's comments are not admissible as any kind of
proper prosecutorial comment on a defendant's failure to produce evidence.

prosecutor that he was expressing his personal opinion on the bias or credibility of those witnesses, the prosecutor's argument here was not improper.

We reach a different conclusion with respect to the prosecutor's suggestion that the jury should draw adverse inferences from defendant's failure to call additional witnesses—and, indeed, should have—to support his theory of defense. The prosecutor's comments were not related to an affirmative defense or any issue on which defendant had the initial burden of production and thus are not permissible under *Mayo*. And although as explained above, under *Spieler*, a prosecutor may be able to comment on a defendant's failure to produce evidence or contradict evidence if "defense counsel invites the factfinder to consider nonadmitted evidence as undermining the state's case," the prosecutor's comments here were not made in response to such an invitation. 269 Or App at 642. That is, the suggestion that defendant could have called other witnesses did not come in response to an argument by defendant that the state could have, but did not, present certain evidence, as would be necessary to fit into the circumstance contemplated by *Spieler*. Rather, defendant argued that it would be "impossible" for the abuse to have happened at the magnitude that C described because the bedroom door was always open and people were walking by, none of whom saw any abuse. In other words, defendant's theory was simply that the jury should not be convinced by the state's evidence of the acts of abuse—an argument bolstered by defense witnesses, who testified that they never saw it occur. That theory was not the type of legal argument contemplated by *Spieler* because it did not rely on defendant identifying unadmitted evidence and then inviting the jury to draw inferences adverse to the state because the state failed to produce that evidence. We therefore conclude that the statements were improper.

We turn to the final question under the plain-error rubric, namely, whether the legal error was so prejudicial that a curative instruction would not have ameliorated the error. *See Chitwood*, 370 Or at 321 (error was one of law "because the statements were so prejudicial that, if defendant had objected and moved for a mistrial, the trial court

would have committed legal error had it denied the motion"). That is, prosecutorial statements that were improper but curable by way of a jury instruction are not an appropriate subject of plain-error review because, in such circumstances, the defendant was not denied a fair trial. *State v. Durant*, 327 Or App 363, 365, 535 P3d 808 (2023).

We conclude that the prosecutor's comments here, as in *Chitwood*, deprived defendant of a fair trial. In reaching that conclusion, *Chitwood* and *Durant* serve as useful bookends. In *Chitwood*, the prosecutor made comments that referred to facts not in evidence and distorted the burden of proof by describing, incorrectly, how the jury could find by a "moral certainty" that the defendant was guilty beyond a reasonable doubt based on something other than the elements of the charged crime. 370 Or at 308-09. The Supreme Court concluded that those arguments were impermissible and deprived the defendant of the right to a fair trial for four reasons: (1) the prosecutor misstated the state's burden of proof, something that is "fundamental to the American justice system"; (2) the prosecutor made the improper comments during rebuttal arguments, which "exacerbated the risk that it would be prejudicial"; (3) the prosecutor then "compounded the error" by referring to other irrelevant matters that were not in evidence; and (4) the case was close, because it hinged on a credibility contest between the defendant and the victim, and the jury had acquitted the defendant of most of the counts. *Id.* at 317-31.

In contrast, in *Durant*, we concluded that the prosecutor's statement did not deprive defendant of a fair trial. 327 Or App at 372. There, the prosecutor's comments, while "not ideal," were "not egregious" because "[t]he prosecutor did not misstate the law, denigrate anyone, improperly shift the burden of persuasion to defendant, or invite an adverse inference from defendant's exercise of a constitutional right." *Id.* at 371. We also observed that the prosecutor's statements in *Durant* were brief, and "the prosecutor immediately transitioned into a substantive discussion of 'reasonable doubt' that no one disputes was legally accurate, * * * thus drawing the jury's attention away from the initial comments and into substantive matters." *Id.* at 372.

In our view, the prosecutor's improper comments in this case were more like the ones in *Chitwood* than those in *Durant*. The prosecutor here *did* misstate the law by suggesting that defendant had some obligation to present evidence when, in fact, he did not. And the prosecutor did so multiple times. Additionally, the comments occurred during rebuttal argument and, as in *Chitwood*, the case was largely a credibility contest between C, who had made and then recanted allegations against defendant, and defendant.

We recognize that the prosecutor correctly stated that the state alone bore the burden of proof and that defendant had no burden to produce witnesses. But that does not cure the prosecutor's improper comments—in fact, it probably increased the likelihood that the jury was misled. That is because, as a result of the prosecutor acknowledging the correct burden of proof and then juxtaposing it with the improper arguments premised on defendant's failure to call witnesses, the jury could reasonably presume that the prosecutor's inappropriate arguments aligned with the burden of proof. In other words, to lay jurors, the prosecutor's correct restatement of the burden of proof likely imbued his *improper* argument with the air of propriety. Those who are not trained lawyers were unlikely to appreciate nuanced contradiction between the prosecutor's correct summary of the burden of proof and the improper mention of defendant's failure to produce witnesses.

And in the particular context of this case, that also made the prosecutor's improper statement difficult to rectify by way of a corrective instruction. The trial court could not merely restate the burden of proof, because the prosecutor had already done so directly before and after making the improper argument. And teasing out the fine distinctions between the burden of proof (properly understood) and the improper parts of the prosecutor's argument—all while not improperly commenting on the evidence—would have been nearly impossible. Put simply, the state so entangled the correct burden of proof with its mischaracterization of that burden that we conclude that defendant was deprived of a fair trial. We therefore reverse.[3]

---

[3] We appreciate—and echo—the dissent's hope that the Supreme Court clarifies in the future how *Chitwood*'s "obvious and not reasonably in dispute" requirement is to function. Indeed, writing on a clean slate, we might likely reach

Reversed and remanded.

**AOYAGI, P. J.**, dissenting.

I agree with the majority that a portion of the prosecutor's closing argument crossed the line into improper burden shifting. However, I disagree that the statements were so egregious as to obviously require a mistrial. That is, on plain-error review, I would hold that it is not obvious and is reasonably in dispute whether the trial court had no choice but to declare a mistrial or, conversely, could have crafted an effective curative instruction had defendant objected. I would therefore reject defendant's plain-error argument and affirm the judgment of conviction. Accordingly, I respectfully dissent.[1]

As the Supreme Court recently explained in *State v. Chitwood*, 370 Or 305, 518 P3d 903 (2022), when a defendant seeks reversal of a judgment of conviction based on prosecutorial misconduct in closing argument, we will reverse only if "the effect of the prosecutor's misconduct was to deny the defendant a fair trial." *Id*. at 311. Given the general rule of curability, a prosecutor's statements have that effect only when they are "so prejudicial that, as a practical matter, the bell once rung, cannot be unrung." *Id*. at 311-12 (internal quotation marks omitted). That is, at least on plain-error review, the statements must have been so egregious that they could not have been addressed with a curative instruction but, instead, required a mistrial. *Id*. at 312 ("[A] defendant asserting plain error must demonstrate that the prosecutor's comments were so prejudicial that an instruction to disregard them would not have been sufficiently curative to assure the court, in its consideration of all the circumstances, that the defendant received a fair trial."); *State v. Durant*, 327 Or App 363, 365, 535 P3d 808 (2023) ("In other words, prosecutorial statements that were improper but

---

a different result here. Until such time as the court provides that clarification, however, we are bound by its holdings and respectfully disagree with the dissent that we can reach a different result.

[1] I limit my discussion to the first and second assignments of error, as they are the subject of the majority opinion. However, I would also reject the other assignments of error on plain-error review and, consequently, would affirm the trial court's judgment.

*curable* are not an appropriate subject of plain-error review."
(Emphasis in original.)).

Since the Supreme Court's decision in *Chitwood*,
this court has faced a large number of cases involving
unpreserved claims of error regarding prosecutorial state-
ments in closing argument. We have resolved some of those
cases on the basis that the challenged statements were not
improper or, at least, not obviously improper. *See, e.g.*, *State
v. Graham*, 333 Or App 228, 231-32, 551 P3d 998 (2024);
*State v. North*, 333 Or App 187, 195, 552 P3d 152 (2024);
*State v. Brannan*, 332 Or App 36, 43, 549 P3d 19 (2024). In
other cases, the prosecutor's statements were improper but
obviously curable with a proper instruction. *See, e.g.*, *State
v. Martinez*, 335 Or App 103, 107, 557 P3d 556 (2024); *State
v. Smith*, 334 Or App 89, 95, 554 P3d 817 (2024); *State v.
Wellington*, 332 Or App 44, 53, 548 P3d 146 (2024).

This case falls within what is presently the most
difficult group of cases to resolve—cases in which the pros-
ecutor made one or more improper statements in closing
argument, but it is debatable whether they were so egre-
gious as to necessitate a mistrial. Such cases are difficult
for at least two reasons. First, *Chitwood* has created uncer-
tainty as to how the "obvious and not reasonably in dispute"
requirement for plain error applies in this context. Second,
the case law is not well developed as to when prosecutorial
misstatements of a "burden-shifting" nature are curable
versus when they trigger a mandatory mistrial. I address
both of those issues below and, in the process, explain why I
would affirm in this case.

*The "obvious and not reasonably in dispute" require-
ment.* One of the three requirements for an error to be "plain"
is that the error is "obvious and not reasonably in dispute."
*State v. Vanornum*, 354 Or 614, 629, 317 P3d 889 (2013). To
put it simply, close questions are not normally the stuff of
plain error.

In this context, as I understand it, the question is
whether it is "obvious and not reasonably in dispute" that
the prosecutor made improper statements so egregious as
to require a mistrial—that is, obvious and not reasonably

in dispute that the defendant was denied a fair trial. *See State v. Montez*, 324 Or 343, 357, 927 P2d 64 (1996), *cert den*, 520 US 1233 (1997) ("[T]he trial court's failure to grant a mistrial *sua sponte* constitutes reversible error only if it is beyond dispute that the prosecutor's comments were so prejudicial as to have denied defendant a fair trial."); *State v. Sparks*, 336 Or 298, 327, 83 P3d 304, *cert den*, 543 US 893 (2004) (same); *State v. McCurry*, 300 Or App 666, 669, 455 P3d 1014 (2019), *adh'd to on recons*, 302 Or App 794, 462 P3d 786 (2020), *rev den*, 368 Or 788 (2021) (same); *see also, e.g.*, *State v. Serrano*, 355 Or 172, 201, 324 P3d 1274 (2014), *cert den*, 576 US 1037 (2015) (holding that it was not "obvious that the jury would draw [improper] inferences" nor was it "beyond dispute that the prosecutor's questions *** were so prejudicial as to have denied defendant a fair sentencing hearing" (internal quotation marks omitted)).

*Chitwood* itself frames the issue that way, stating that plain-error review "is permitted, and reversal may be warranted if 'it is beyond dispute that the prosecutor's comments *were so prejudicial as to have denied defendant a fair trial.*'" 370 Or at 312 (quoting *Montez*, 324 Or at 357) (emphasis added). Whether the defendant was obviously denied a fair trial thus depends on both the impropriety of the statement and its incurability.[2]

The "obvious and not reasonably in dispute" requirement makes our job on plain-error review more limited than on regular review. We are not deciding whether the defendant is ultimately correct that a mistrial was required, as we would with a preserved claim of error, but instead deciding whether it is *obvious and not reasonably in dispute* that a mistrial was required. That is an important distinction, because plain-error review always involves a question of law,

_____

[2] Admittedly, we have not been perfectly consistent in describing the error that must be obvious and not reasonably in dispute. In one post-*Chitwood* case, we described the issue as "whether the prosecutor's statements were obviously improper or impermissible." *State v. Pierpoint*, 325 Or App 298, 304, 528 P3d 1199 (2023). Certainly, if statements are not obviously improper or impermissible, they cannot be so egregious as to require a mistrial. But, as reiterated in *Chitwood*, the error is not simply making improper statements—it is making improper statements so egregious as to be incurable and thus deny a fair trial. The framing of the error in *Chitwood*, as well as the weight of the case law, support the issue being whether it is obvious and not reasonably in dispute that the prosecutor's statements were so egregious as to necessitate a mistrial.

*Vanornum*, 354 Or at 629, and a question of law always, in the end, has one correct answer. But there would be no difference between regular and plain-error review if we simply answer the legal question in every case. The requirement that the error must be "obvious and not reasonably in dispute" is a key limiting characteristic of plain-error review.

Unfortunately, *Chitwood* has created uncertainty as to how the "obvious and not reasonably in dispute" requirement applies on plain-error review of prosecutorial statements in closing argument. That requirement is mentioned only in passing in the application section of *Chitwood*, despite being a substantial limitation on plain-error review and a frequent reason that plain-error claims fail in this court. It is addressed in a single, summary sentence: "The error also is obvious and not reasonably in dispute[.]" 370 Or at 321. Moreover, it is difficult to read between the lines to discern how the *Chitwood* court actually understood and applied the requirement. Not only are there few clues in the opinion, but the court itself split 4-3 on the curability of the error, *see id.* at 329 (Garrett, J., dissenting, joined by Balmer, J., and Kistler, S. J.), which at least raises questions about the necessity of a mistrial being obvious and not reasonably in dispute.

I hope that the Supreme Court may clarify in the near future how we are to apply the "obvious and not reasonably in dispute" requirement for plain error in this context, taking into account how *Chitwood* frames the error at issue. Until then, we should continue to follow the weight of the existing case law. Here, that would lead me to affirm. Regardless of what answer we might reach in a preserved posture, this case presents a close enough question that I cannot say that it is "obvious and not reasonably in dispute" that the trial court's only option was to declare a mistrial. The error therefore is not "plain" in my view, and I would affirm.

*Curability of "burden-shifting" statements.* This case also implicates a well-established principle of Oregon law: that jurors are presumed to have followed the trial court's instructions on the law and trial procedure, "absent an overwhelming probability that they would have been unable to

do so." *State v. Smith*, 310 Or 1, 26, 791 P2d 836 (1990); *State v. Williams*, 276 Or App 688, 695, 368 P3d 459, *rev den*, 360 Or 423 (2016) (same). As the Supreme Court put it in *Chitwood* in the specific context of prosecutorial misconduct, "Generally, a proper jury instruction is adequate to cure any presumed prejudice from a prosecutor's misconduct." 370 Or at 311.

The presumption that jurors follow their instructions has been applied time and again. It has been applied with respect to general instructions. *See, e.g.*, *Serrano*, 355 Or at 192 (nothing in the record suggested that the jury was unable to follow the court's instructions on the burden of proof); *North*, 333 Or App at 195 (the court's instructions on self-defense were adequate to cure the prosecutor's incomplete statement of the law in closing argument); *State v. Washington*, 355 Or 612, 661, 330 P3d 596, *cert den*, 574 US 1016 (2014) (presuming that the jury followed the court's instruction that attorneys' statements are not evidence, where the prosecutor referenced uncharged violent conduct by the defendant); *Grant v. Coursey*, 277 Or App 165, 181, 370 P3d 892, *rev den*, 360 Or 235 (2016) (we were "not persuaded that the prosecutor's mischaracterization of [a witness's] testimony would have interfered with the ability of the jury to follow its instructions" in a sexual abuse trial, which included an instruction that the jury was the sole decider of the facts).

It also has been applied with respect to curative instructions. *See, e.g.*, *State v. Johnson*, 329 Or App 728, 734-35, 542 P3d 506 (2023), *rev dismissed*, 372 Or 560 (2024) (curative instruction to ignore vouching testimony by a detective was adequate); *State v. Harris*, 303 Or App 464, 467, 461 P3d 1080, *rev den*, 367 Or 291 (2020) (curative instruction to disregard the complainant's testimony alluding to what the defendant had "done in the past" was adequate); *Williams*, 276 Or App at 695-96 (curative instruction to ignore vouching testimony by a detective was adequate); *State v. Garrison*, 266 Or App 749, 757, 340 P3d 49 (2014), *rev den*, 356 Or 837 (2015) (curative instruction to disregard testimony that the defendant had previously been investigated for sexual abuse was adequate); *State v. Middleton*,

256 Or App 173, 179, 300 P3d 228, *rev den*, 354 Or 62 (2013) (curative instruction to disregard testimony that implied that the defendant had prior sex-crime convictions was adequate). Over and over, we have expressed great confidence in jurors' ability to follow the court's instructions.

Of course, there are some situations in which the bell cannot be unrung, requiring a mistrial. For example, it is easy to understand why a curative instruction may be inadequate when the prosecutor reveals factual information that the jury should not know and will likely find especially hard to forget. *See, e.g.*, *State v. White*, 303 Or 333, 336, 736 P2d 552 (1987) (a mistrial was necessary where the prosecutor told the jury in opening statement that the defendant had refused to testify in his codefendant's trial); *State v. Jones*, 279 Or 55, 63, 566 P2d 867 (1977) (a mistrial was necessary where the prosecutor repeatedly insinuated in a rape trial that the defendant had committed many other rapes in the past, as well as putting on evidence to that effect that was stricken); *State v. Cox*, 272 Or App 390, 410, 359 P3d 257 (2015) (a mistrial was necessary where the prosecutor referenced "inflammatory facts not in evidence" regarding the defendant being a drug dealer and beating the complainant's mother).

It is also understandable that an improper appeal to jurors' emotions, especially in a fraught case, could be so insidious as to necessitate a mistrial. *See, e.g.*, *State v. Muniz*, 332 Or App 56, 63, 548 P3d 172, *rev den*, 372 Or 763 (2024) (the prosecutor's improper appeal to the jurors' emotions during rebuttal closing argument in an "emotionally fraught case" was incurable); *State v. Bolt*, 108 Or App 746, 750, 817 P2d 1322 (1991) (the prosecutor's conduct in improperly "leading the jury's attention to the specific facts of other unrelated, particularly heinous crimes" was incurable). Similarly, insults or personal attacks could be incurable in some instances. *See State v. Lundbom*, 96 Or App 458, 461-62, 773 P2d 11, *rev den*, 308 Or 382 (1989) ("To attempt to establish a defendant's guilt by making unwarranted personal attacks on his attorney and the witness is not only unfair, but it impugns the integrity of the system as a whole. Such comments dangerously overshadow what a

defendant's case is really about, and we presume that they prejudice a defendant.").

At this point, the case law is still developing as to when prosecutorial misstatements that improperly "shift the burden" in some way to the defendant are so egregious that they cannot be cured and require a mistrial. Certainly, *Chitwood* itself involved, in part, a burden-shifting error. *See Chitwood*, 370 Or at 316-17 (the prosecutor's statements both "distorted the burden of proof" and "appealed to the jurors' moral sensibility about an irrelevant circumstance" to urge them to "decide the case on an improper basis"). But we have never viewed improper "burden shifting" statements as *per se* incurable, nor do I understand *Chitwood* to take such a view. *See, e.g.*, *Serrano*, 355 Or at 192 ("The jury was instructed that the state had the burden of proof \*\*\* [and] [n]othing in the record suggests that the jury in this case was unable to follow the court's instructions."); *State v. Purrier*, 265 Or App 618, 621-22, 336 P3d 574 (2014) (prosecutorial statements that may have misled the jury about the burden of proof were cured by "the trial court repeatedly instruct[ing] the jury \*\*\* that the state had the burden to prove that defendant was guilty beyond a reasonable doubt"). Indeed, there is no reason to assume that "burden-shifting" type statements are any less curable, inherently, than other errors at trial. Curability will depend on the specific circumstances.

I appreciate the majority's effort to meaningfully explain why the prosecutor's burden-shifting statements in this case were incurable. It is certainly important that we explain our reasoning on incurability. However, I am ultimately unpersuaded that the statements here were obviously incurable. The burden of proof is a legal concept that necessarily must be explained to the jurors, just as the elements of an offense and other aspects of a criminal trial must be explained. Had defendant objected, I believe that the trial court likely would have been able to craft an effective curative instruction. *Cf. Smith*, 334 Or App at 95 (the prosecutor's misstatement that the defendant bore the burden of persuasion was curable, as "a straightforward and potentially easy-to-dispel misstatement of the legal

consequences"). Because defendant did not object, we do not have the benefit of the trial court's assessment of curability, nor do we know what instruction it might have given. We are therefore necessarily in the territory of hypotheticals. But, at a minimum, I do not consider it obvious and beyond reasonable dispute that it would have been impossible to craft an effective instruction that the jury would have followed.

For those reasons, I would affirm and, therefore, respectfully dissent.