682 February 12, 2025 No. 83

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

JADE DAMIAN STARR,
*Defendant-Appellant.*

Lane County Circuit Court
22CR17208; A180618

Stephen W. Morgan, Judge.

Submitted September 25, 2024.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Andrew D. Robinson, Deputy Public Defender, Office of Public Defense Services, filed the briefs for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Leigh A. Salmon, Assistant Attorney General, filed the brief for respondent.

Before Shorr, Presiding Judge, Powers, Judge, and Pagán, Judge.

SHORR, P. J.

Reversed and remanded.

**SHORR, P. J.**

Defendant appeals a judgment of conviction for driving under the influence of intoxicants (DUII), ORS 813.010(4), raising two assignments of error. We focus on defendant's second assignment of error in which he argues that the trial court erred in denying his motion to strike a comment made by the prosecutor during closing argument. Defendant's theory of the case was that he became impaired after he stopped driving, when he took a Xanax pill and drank a can of beer, and that the state failed to prove beyond a reasonable doubt that defendant *drove* while intoxicated. During his closing argument, the prosecutor stated that defendant "never actually presented a bottle or even a prescription tape of Xanax." Defendant moved to strike the comment pointing out that he was not required to present any evidence, but the trial court overruled his objection. We conclude that the trial court erred in declining to strike the comment because it suggested to the jury that defendant was required to present evidence to corroborate his account of what occurred. That suggestion undermined the presumption of innocence and improperly shifted the burden of proof. We further conclude that the error was not harmless. We therefore reverse and remand defendant's DUII conviction.

## FACTUAL AND PROCEDURAL BACKGROUND

In March 2022, at about 11:00 p.m., Deputy Blackburn from the Lane County Sheriff's Office responded to a report of a vehicle off the side of the road. Blackburn spotted the vehicle about 10 to 15 feet off the edge of the road. The vehicle's lights were on, the passenger window was rolled down, and the engine was running. The tire tracks indicated that the vehicle had traveled about 316 feet while off the road. Defendant was in the driver's seat and he "appeared to be passed out or unconscious or asleep."

The deputy was concerned that defendant had suffered a medical emergency, so he called for medics. Blackburn initially had trouble rousing defendant, but defendant woke up when Blackburn poked him through the open window with his flashlight and called out to him. Defendant had

bloodshot, watery eyes, slurred speech, and the deputy could smell the odor of an alcoholic beverage. Using his flashlight, Blackburn observed an empty beer can inside the car.

Blackburn suspected that defendant had been driving while under the influence of alcohol. The deputy administered field sobriety tests (FSTs), and defendant exhibited signs of intoxication. Blackburn arrested defendant for DUII. At the Lane County Jail, a breath test revealed that defendant had a blood alcohol content of 0.16 percent.

Before trial, defendant moved to suppress evidence obtained from the deputy's search of his vehicle. The trial court denied the motion. In his opening statement, defendant argued that he took a Xanax pill and drank a can of beer in his car after he had stopped driving, and that the state would be unable to prove that he drove while impaired.

The jury heard testimony from Blackburn, and from defendant and his daughter. Defendant testified that he and his family were in Arizona when they learned that their dog was missing. Defendant and his daughter traveled home to search for the dog, and defendant had very little sleep in the days leading up to his encounter with the deputy. On that day, defendant bought a four-pack of "Rogue Dead Guy Ale." Defendant ate dinner at a restaurant in Veneta, where he drank a Coors Light beer. Defendant testified that he did not feel any effect from the beer that he had at the restaurant.

While driving to the area where he had set an animal trap, defendant noticed that he was falling asleep at the wheel, so he stopped and parked on the side of the road. While there, defendant had a "panic attack" and took a Xanax. Defendant opened a can of beer, and he did not remember anything else until the deputy woke him.[1] During his interaction with the deputy, defendant was "a little disoriented."

On cross-examination, defendant stated that he had a prescription for Xanax, but he could not explain why he told the deputy administering the FSTs that he had not taken any medications. Defendant stated, "I mean, I could show you my health records, but I—I don't know." In rebuttal,

---

[1] It is not clear what happened to the four-pack of beer. Only one empty beer can was found in the car.

Blackburn testified that when he searched defendant's vehicle, he did not find a bottle for Xanax. In addition, an inventory report prepared by another deputy did not indicate that Xanax was found in the car.

Defendant's theory of the case was that he became impaired after he took the Xanax pill and drank a can of beer in his car, but that he was not intoxicated when he drove. In closing argument, the prosecutor argued as follows:

"[PROSECUTOR]: The—the [d]efense seems to—seems to agree that, yes, when Officer Blackburn found the [d]efendant that he was quite impaired to *** say the very least, a combination of Xanax, which was never actually found. *The [d]efense never actually presented a bottle or even a prescription tape of Xanax.*

"[DEFENSE COUNSEL]: Judge, we're not required to present any evidence, and so I'd move to strike that comment.

"THE COURT: It's overruled."

(Emphasis added.) During defendant's closing argument, defendant reiterated that the state failed to prove beyond a reasonable doubt that he drove while under the influence as opposed to becoming intoxicated after he stopped driving. The jury found defendant guilty of DUII.

## ANALYSIS

Because it is dispositive, we begin with defendant's second assignment of error in which he argues that the trial court erred in denying his motion to strike the prosecutor's comment about his failure to produce evidence. Generally, we review a trial court's decision to overrule an objection to closing arguments for abuse of discretion. *State v. Totland*, 296 Or App 527, 531, 438 P3d 399, *rev den*, 365 Or 502 (2019). However, we review whether the prosecutor misstated the law during closing arguments for legal error. *State v. Purrier*, 265 Or App 618, 620, 336 P3d 574 (2014).

After this case was submitted, we requested supplemental briefing to address the effect on this case of *State v. Skotland*, 372 Or 319, 549 P3d 534 (2024) (*Skotland I*). In that case, the defendant testified that he believed that he

was eligible to purchase a firearm despite prior felony convictions because he filled out expungement paperwork with an attorney. *Id.* at 322. In closing arguments, the prosecutor pointed out that the defendant refused to identify the attorney and the defendant claimed that the expungement documents were destroyed in a fire. *Id.* at 325. On appeal, the defendant argued that the prosecutor's comments constituted impermissible burden-shifting, but the Supreme Court held that the defendant's arguments were unpreserved. *Id.* at 330. On remand, we addressed whether the defendant's arguments qualified for plain-error review. *State v. Skotland*, 337 Or App 368, 370, ___ P3d ___ (2025) (*Skotland II*). We concluded that they did not. We explained that it was not obvious "that the prosecutor here was suggesting that [the] defendant must produce evidence to support his theory of defense rather than arguing that the jury should be unpersuaded by the evidence that [the] defendant *did* put in the record—his own testimony." *Id.* at 371 (emphasis in original).

By contrast, here, we address a preserved argument. When the prosecutor argued that defendant "never actually presented a bottle or even a prescription tape of Xanax," defendant moved to strike the comment on the ground that he had no burden to produce evidence, and the trial court overruled the objection. We conclude that the trial court erred when it did so, and that the error was not harmless.

In *State v. Smith*, 334 Or App 89, 92, 554 P3d 817 (2024), we explained,

> "Remarks concerning evidence that a defendant has or has not presented can sometimes fall on either side of a thin line. On one side, it is permissible for a prosecutor to argue that a defendant's evidence is unconvincing, and that the jury should not be persuaded by it. On the other side of that thin line, it is impermissible for a prosecutor to argue that a defendant was required to or had a burden to present corroborating evidence, evidence that contradicts the state's evidence, or, indeed, any evidence at all."

Applying that approach here, the prosecutor's initial statement that no Xanax was found in defendant's car was based on the evidence and therefore a permissible argument. However, the prosecutor crossed the line when he

suggested that defendant had a burden to present corroborating evidence. To clarify the distinction, we address each of those arguments in some detail.

During trial, defendant testified that he "kept a couple of Xanax" in the console of his car, and that he took one of the pills after he stopped driving. Blackburn testified in rebuttal that he did not find a prescription bottle for Xanax in the car. In addition, the impound report, which defendant introduced as an exhibit, did not list Xanax as an item found in the car. Based on that evidence, it was permissible for the prosecutor to argue that no Xanax was found. By doing so, the prosecutor relied on evidence in the record to call into question the credibility of defendant's account of what occurred. *See State v. Slay*, 331 Or App 398, 404, 545 P3d 768, *rev den*, 372 Or 560 (2024) ("Advocacy * * * would be nearly impossible if attorneys were not able to comment on a witness's credibility, provided that their argument is grounded in the evidence in the record."); *see also Cler v. Providence Health System-Oregon*, 349 Or 481, 487, 245 P3d 642 (2010) (explaining that, in closing arguments to the jury, counsel have a large degree of freedom to comment on the evidence and urge the jury to draw legitimate inferences from the evidence).

However, the prosecutor crossed the line separating permissible from impermissible argument when he stated that defendant "never actually presented a bottle or even a prescription tape of Xanax." That argument suggested that defendant had the burden to corroborate his claim with further evidence that he took a Xanax pill and drank a beer after he stopped driving. The comment was improper because it raised a "realistic possibility of confusing the jurors about the ultimate standard or burden of proof." *Totland*, 296 Or App at 531. Defendants are presumed innocent, and they have no burden to present evidence. Of course, when defendants choose to testify, then prosecutors can comment on their testimony, including any damaging testimony elicited on cross-examination.[2] But, by choosing to testify, defen-

---

[2] For example, on cross-examination, the prosecutor effectively drew attention to the inconsistency between defendant's testimony that he took a Xanax after he stopped driving, and Blackburn's testimony that, before administering FSTs, he asked defendant whether he had taken any medications and defendant responded that he had not.

dants do not lose or waive the presumption of innocence. *See State v. Rosasco*, 103 Or 343, 357, 205 P 290 (1922) ("The presumption of innocence is not a mere form, but a substantial part of the law, that remains with the defendant from the beginning of the trial until a verdict is found."). As a result, prosecutors cannot argue that defendants must corroborate their testimony. That argument "could erroneously lead the jury to believe that the defendant carried the burden of introducing evidence to prove his or her innocence." *State v. Mayo*, 303 Or App 525, 537, 465 P3d 267 (2020); *see also State v. Brannan*, 332 Or App 36, 43, 549 P3d 19 (2024) (explaining that, in *Mayo*, the prosecutor's argument was improper because it implied that "the defendant should have presented *corroborating evidence*—beyond the defendant's own testimony—to support his theory of the case" (emphasis in original)). Further, as we discuss later, the prosecutor was not merely referring to or commenting upon defendant's testimony about providing health records but improperly suggesting that defendant had a burden to produce evidence, namely the bottle of Xanax or the prescription for it.

The state argues that *Brannan* stands for the proposition that "[p]rosecutors are free to comment on *** [a] defendants' failure to produce evidence to support their factual theory of defense[.]" *Brannan* does not support that claim. In *Brannan*, the prosecutor argued that the defendant had "'to convince [the jury] with evidence.'" 332 Or App at 42. We determined that the prosecutor's argument did not amount to plain error because the jury may have understood it as an argument about how the jury should assess the defendant's theory of the case in light of the evidence presented at trial. *Id.*

In addition, in *Brannan*, which was another case in which the defendant argued that the state failed to prove that he drove while intoxicated, the defendant did not testify about how he became impaired after he stopped driving; instead, he argued that the state failed to prove that he was the driver. *Id.* at 39-40. Given that argument, it was permissible for the prosecutor to point out that the evidence did not support the defense theory because there was circumstantial evidence that the defendant was the driver. Similarly,

here, it was permissible for the prosecutor to argue that the evidence did not support defendant's theory of the case—Xanax "was never actually found." But it was not permissible to argue that defendant failed to corroborate his testimony—"The [d]efense never actually presented a bottle or even a prescription tape of Xanax." The second argument undermined the presumption of innocence; the first argument did not.

The state argues that defendant's reference on cross-examination to his "health records" was an offer to produce corroborating evidence that entitled the prosecutor to argue that defendant failed to do so. However, read in context, it was the prosecutor during cross-examination who raised the issue of defendant's prescription for Xanax, not defendant, and defendant was simply attempting to explain, perhaps ineffectively, why he told the officer he hadn't taken any medications. In any event, given the importance of the presumption of innocence, it is simply too risky to allow prosecutors to argue that defendants must corroborate their testimony as opposed to, for example, pointing out inconsistencies between the other evidence and a defendant's testimony or explaining why the evidence does not support a defendant's theory of the case. *See Skotland II*, 337 Or App at 371-72 (distinguishing between using evidence to attack credibility and requiring defendants to corroborate their testimony).[3] We further observe that this case arises in the posture of a preserved error in which defendant specifically objected to the prosecutor's comment that defendant failed to provide evidence of the Xanax bottle. The trial court was given the opportunity to make clear that defendant had no burden to present such evidence. The court erred when it did not do so.

Next, we consider whether the trial court's error in failing to strike the prosecutor's comment was harmless. *Purrier*, 265 Or App at 621. Under Article VII (Amended), section 3, of the Oregon Constitution, we must affirm despite error if there is "little likelihood that the particular error affected the verdict[.]" *State v. Davis*, 336 Or 19, 32, 77 P3d

---

[3] In *Mayo*, 303 Or App at 532-34, and *State v. Spieler*, 269 Or App 623, 641-42, 346 P3d 549 (2015), we addressed circumstances when a prosecutor may comment on a defendant's failure to present evidence, but those circumstances are not relevant here.

1111 (2003). We do not review a prosecutor's arguments in a vacuum, but rather, we review the arguments in context to determine whether they would have misled the jury about the state's burden to prove the defendant guilty beyond a reasonable doubt. *Purrier*, 265 Or App at 621.

Considering the prosecutor's comment in context, it was not harmless. We recognize that if defendant took a Xanax and drank a can of beer after he stopped driving, then that does not rule out the possibility that he was *also* intoxicated before he stopped driving. We also recognize that there was circumstantial evidence that defendant drove while intoxicated, including the evidence that his vehicle traveled a substantial distance off the road before coming to a stop, and when the deputy approached the vehicle, the lights were on, the engine was running, and defendant was slumped unconscious in the driver's seat. Nevertheless, our harmless-error analysis concerns "the possible influence of the error on the verdict rendered, not whether this court, sitting as a factfinder, would regard the evidence of guilt as substantial and compelling." *Davis*, 336 Or at 32. Here, the prosecutor's comment created a risk that the jurors convicted defendant not because they were convinced beyond a reasonable doubt that he drove while impaired, but instead because defendant failed to corroborate his claim that he became impaired after he stopped driving. We cannot say that "the particular issue to which the error pertains ha[d] no relationship to the jury's determination of its verdict." *Id.* In other words, there is some likelihood that the error affected the verdict.

In addition, by overruling defendant's request to strike the prosecutor's improper argument, the trial court accentuated the error. "The overruling of that objection gave the jury reason to think that the prosecutor's statement was, in fact, a correct statement of the law." *State v. Worth*, 231 Or App 69, 79, 218 P3d 166 (2009), *rev den*, 347 Or 718 (2010); *see also State v. Newburn*, 178 Or 238, 241, 166 P2d 470 (1946) (noting that overruling an objection to an improper argument can accentuate the error). As a result,

> "there was at least the potential for the jury to be confused about the presumption of innocence. We conclude that, although the prejudice from the prosecutor's misstatement[]

*** could have been remedied by a curative instruction, the fact remains that it was not, because the court did not perceive any error or prejudice to remedy."

*Worth*, 231 Or App at 77.

"We must reverse when it is clear that an argument was improper, properly challenged and likely to prejudice the jury unfairly." *State v. Rosenbohm*, 237 Or App 646, 649, 241 P3d 344 (2010) (internal quotation marks omitted). Here, the prosecutor's comment was improper, it was appropriate for defendant to move to strike it, and the trial court's failure to do so could have led the jury to convict defendant based on his failure to corroborate his testimony that he became impaired after he stopped driving. We therefore reverse defendant's DUII conviction and remand for further proceedings.

Having resolved that issue, we briefly address defendant's first assignment of error. Defendant argues that the trial court erred in denying his motion to suppress evidence. We conclude that the trial court did not err because the deputy's use of a flashlight to observe what would have been plainly visible during daylight did not constitute a search under the state or federal constitutions. *See State v. Faulkner*, 102 Or App 417, 421, 794 P2d 821, *rev den*, 310 Or 422 (1990) (stating that use of a flashlight "to see what was otherwise in plain view did not significantly impair [the] defendant's freedom from scrutiny and was, therefore, not a search"); *see also State v. Peek*, 310 Or App 587, 592-93, 485 P3d 292, *rev den*, 368 Or 597 (2021) (officer's use of a flashlight to see a gun in defendant's jacket that would have been visible in daylight did not amount to a search); *see also Texas v. Brown*, 460 US 730, 739-40, 103 S Ct 1535, 75 L Ed 2d 502 (1983) (use of a flashlight to illuminate the interior of a car did not constitute a search triggering Fourth Amendment protection).

We are not persuaded by defendant's argument that cases like *Faulkner* and *Peek* should be overruled as plainly wrong, and we cannot overrule decisions of the United States Supreme Court. *State v. Moyle*, 299 Or 691, 707, 705 P2d 740 (1985). In any event, we also conclude the deputy's limited entry into defendant's vehicle to use his flashlight to rouse

defendant was justified by the emergency aid exception to the warrant requirement. *State v. Martin*, 124 Or App 459, 464, 863 P2d 1276 (1993); *State v. Wood*, 210 Or App 126, 130-31, 149 P3d 1265 (2006). Thus, the trial court did not err in denying defendant's motion to suppress, and we reject defendant's first assignment of error.

Reversed and remanded.