No. 402        May 7, 2025        341

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

JACK DARCY IRISH,
*Defendant-Appellant.*

Clackamas County Circuit Court
19CR71008; A179101

Susie L. Norby, Judge.

Submitted March 6, 2025.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Stephanie Hortsch, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Rolf C. Moan, Assistant Attorney General, filed the brief for respondent.

Before Aoyagi, Presiding Judge, Egan, Judge, and Joyce, Judge.

JOYCE, J.

Convictions on Counts 1 to 5, 10, and 12 reversed and remanded; remanded for resentencing on Count 6; otherwise affirmed.

**JOYCE, J.**

At trial, the state presented evidence that defendant, while highly intoxicated, repeatedly subjected his estranged wife, J, to forcible and coercive sexual conduct, assault, and strangulation. Defendant argued to the jury that his extreme level of intoxication created reasonable doubt as to whether he had formed the knowing and intentional mental states required to prove the most serious charges against him. In rebuttal, the prosecutor attempted to overcome that so-called "voluntary intoxication" theory by highlighting for the jury types of evidence that defendant did *not* present. Defendant objected to that argument as "burden shifting," but the court overruled the objection. The state continued, arguing that defendant failed to present evidence as to the precise amount of Ativan he had taken or how a doctor might expect that amount of Ativan to affect a person. The state argued that defendant failed to present that evidence "because the defendant was aware of what was going on and the evidence shows that."

On appeal, defendant assigns error to the trial court overruling his "burden shifting" objection. Because we agree that the trial court erred in that regard and that the error was not harmless,[1] we reverse defendant's convictions for first-degree rape (Count 1), two counts of first-degree sodomy (Counts 2, 3), strangulation (Count 5), coercion (Count 10), and menacing constituting domestic violence (Count 12) and remand. Because defendant's "voluntary intoxication" theory did not apply to his assault conviction, we remand that conviction only for resentencing. We otherwise affirm.[2]

## BACKGROUND

An exhaustive summary of the evidence presented at defendant's six-day jury trial is unnecessary for our purposes. Suffice it to say that there was evidence that defendant

---

[1] Our decision on the "burden shifting" issue obviates the need for us to address defendant's second assignment of error, in which he argues that the trial court plainly erred in failing to instruct the jury regarding the mental-state element that attached to the "incapable of consent" element of the first-degree sodomy charged in Count 4.

[2] A jury found defendant guilty of three counts of assault (Counts 6, 7, 8) that merged into a single conviction (Count 6). The jury acquitted defendant on Counts 9 and 11.

was highly intoxicated and threatening to commit suicide. J went to defendant's apartment to secure defendant's firearms to ensure that he did not use them to harm himself. When she arrived, defendant repeatedly assaulted her.

As mentioned above, defendant's theory of defense—at least with regard to the charges that had a knowing or intentional mental state[3]—was that the state had failed to establish that he had acted with the requisite culpable mental state because, at the time, he was under an extreme level of intoxication. *See* ORS 161.125(1) ("[E]vidence that the defendant * * * was intoxicated may be offered by the defendant whenever it is relevant to negative an element of the crime charged."); *State v. Sells*, 324 Or App 29, 38, 524 P3d 517, *rev den*, 371 Or 308 (2023) ("[E]vidence of voluntary intoxication *can* be considered to determine the defendant's mental state at the time of an offense." (Emphasis in original.)). More precisely, the narrative that defendant argued to the jury was that his extreme intoxication was such that he believed he was engaging in consensual, aggressive sex with J, until J did or said something that made him realize that she was not consenting to his conduct. At that point, he would stop. But after some time passed, he would forget that J had objected to his conduct, and that same chain of events would repeat.

The plausibility of that narrative rested on two key components, for which there was at least some evidence in the record: (1) that defendant and J used to engage in consensual "aggressive sexual encounters" earlier in their relationship, and (2) that defendant was extremely intoxicated. On the latter point, there was evidence to suggest that defendant's level of intoxication was severe. On a one-to-ten scale that rated defendant's level of intoxication, J testified that defendant appeared to be a "nine and a half." J testified that, at one point, defendant passed out on top of her. J believed that defendant had mixed alcohol with either Xanax or Ativan. And, after defendant was arrested, J returned to defendant's

---

[3] Defendant's "voluntary intoxication" theory did not apply to the assault charges brought against defendant because those charges alleged a reckless mental state. *See* ORS 161.125(2) ("When recklessness establishes an element of the offense, if the defendant, due to * * * voluntary intoxication, is unaware of a risk of which the defendant would have been aware had the defendant been not intoxicated * * *, such unawareness is immaterial.").

apartment and discovered an empty bottle of Ativan, which had been prescribed to defendant's mother. A medical doctor testified that mixing alcohol and a benzodiazepine, such as Ativan, can present as "significant impairment." Finally, defendant testified that, on the day of the incident, he had taken a "handful" of Ativan, mixed it with alcohol, and the next thing he remembered was waking up in jail.

In response to defendant's theory, the state spent considerable time in closing arguments articulating all the ways in which the evidence established that defendant—despite being heavily intoxicated—was not so intoxicated that he lacked the applicable mental states for the charged crimes.

That background sets the stage for the portion of the prosecutor's rebuttal argument that lies at the heart of this appeal. During rebuttal argument, the prosecutor argued, over defendant's objection, that defendant's failure to present additional evidence undercut his "voluntary intoxication" theory:

> "[PROSECUTOR:]   I want to talk for a moment about the things defense talked about. The defense presented a case. What you didn't hear was from the defendant's mother, who could have told someone, or a doctor about what—
>
> "[DEFENSE   COUNSEL:]   Objection,   Your   Honor. Burden shifting.
>
> "THE COURT:   Overruled.
>
> "[PROSECUTOR:]   The defense could have called his mother to testify as to the dosage of the Ativan. They could have called a doctor to say these are the effects of Ativan and alcohol together, but they didn't. And that's because the defendant was aware of what was going on and the evidence shows that."[4]

---

[4] Although defendant did not renew his objection after the prosecutor completed his thought, we consider the statements made just before and after defendant's objection in evaluating the trial court's ruling. *See State v. Howard*, 337 Or App 675, 677-78, 564 P3d 494 (2025) (rejecting the state's argument that the "defendant's argument is only preserved with regard to the portion of the prosecutor's statements made prior to defendant's objection, and that any error which may be contained in the prosecutor's statement following the court's overruling may only be reviewed for plain error"); *State v. Mayo*, 303 Or App 525, 530 n 2, 465 P3d 267 (2020) (similar).

On appeal, defendant argues that the trial court erred in overruling his "burden shifting" objection. In response, the state argues that the court did not err because the prosecutor's argument was not impermissible burden shifting and, alternatively, because any error was harmless.

Generally, we review a trial court's decision to overrule an objection to closing arguments for abuse of discretion. *State v. Starr*, 337 Or App 682, 686, 564 P3d 933 (2025). But we review whether a prosecutor's arguments were improper for legal error. *Id.* And "[i]f an argument was improper, properly challenged, and likely to prejudice the jury unfairly, upon review, we must reverse." *State v. Howard*, 337 Or App 675, 678, 564 P3d 494 (2025) (internal quotation marks omitted).

## ANALYSIS

The state charged defendant with committing rape, sodomy, strangulation, coercion, and menacing—each with either a knowing or intentional mental state. The state thus bore the burden to prove beyond a reasonable doubt that defendant acted with those mental states. *See, e.g.*, *State v. Wiltse*, 373 Or 1, 18, 559 P3d 380 (2024) ("[T]he state bears the burden of proving all the elements of the crime beyond a reasonable doubt."). Defendant's "voluntary intoxication" theory did not alter that burden. The legislature has made clear that a defendant's intoxication can be a relevant fact in determining whether the defendant acted knowingly or intentionally:

> "The use of drugs or controlled substances, dependence on drugs or controlled substances or voluntary intoxication shall not, as such, constitute a defense to a criminal charge, but in any prosecution for an offense, evidence that the defendant used drugs or controlled substances, or was dependent on drugs or controlled substances, or was intoxicated may be offered by the defendant whenever it is relevant to negative an element of the crime charged."

ORS 161.125(1). In other words, "voluntary intoxication" is not something that excuses criminal conduct altogether (like the self-defense or necessity defenses), but it can be a fact relevant to whether a defendant acted knowingly or intentionally. *Sells*, 324 Or App at 38. As a practical matter,

that means a defendant's "voluntary intoxication" is no different than any other fact that may bear on a defendant's mental state. That being the case, the fact that defendant relied on a "voluntary intoxication" theory did not alter the state's burden to prove that defendant acted knowingly and intentionally in committing the charged crimes—or at the very least, the state has developed no argument that it did.

In argument to a jury, a prosecutor is prohibited from making arguments that raise "some realistic possibility of confusing the jurors about the ultimate standard or burden of proof." *State v. Totland*, 296 Or App 527, 531, 438 P3d 399, *rev den*, 365 Or 502 (2019) (internal quotation marks omitted). Broadly speaking, a prosecutor is allowed to "explain[] to the jury the state's view of the evidence and explain[] why the evidence should lead the jurors to conclude that the state has proved its case against [a] defendant," *State v. Martinez*, 335 Or App 103, 105, 557 P3d 556 (2024). But it may not "discuss[] the evidence in a way that leads the jurors to believe that defendant bears the burden to disprove the state's case." *Id.* at 106; *accord State v. Smith*, 334 Or App 89, 92, 554 P3d 817 (2024) ("Remarks concerning evidence that a defendant has or has not presented can sometimes fall on either side of a thin line. On one side, it is permissible for a prosecutor to argue that a defendant's evidence is unconvincing, and that the jury should not be persuaded by it. On the other side of that thin line, it is impermissible for a prosecutor to argue that a defendant was required to or had a burden to present corroborating evidence, evidence that contradicts the state's evidence, or, indeed, any evidence at all.").

For that reason, the state is generally not allowed to comment on the defendant's failure to present evidence. That said, we have recognized that "a prosecutor may comment on a defendant's failure to present evidence (1) of affirmative defenses, and (2) when the defense has raised an issue on which the defendant bears the initial burden of production but fails to present any evidence." *State v. Arena*, 336 Or App 291, 294, 560 P3d 757 (2024) (internal citations omitted); *see also State v. Perez*, 373 Or 591, 619, ___ P3d ___ (2025) (Bushong, J., concurring) ("[A] prosecutor should

never argue or suggest to the jury that the defendant has the burden of proving anything, except with the law places the burden of proving an affirmative defense on the defendant."). Additionally, "a prosecutor may be permitted to comment on a defendant's failure to present evidence when a defendant makes an argument that the state has failed to present certain evidence—with the implication that such evidence would have supported the defense or undermined the state's case." *Id.* at 295 (internal quotation marks omitted). In that circumstance, a "prosecutor can respond by noting that the defense has the ability to produce that evidence." *Id.* (internal quotation marks omitted). Here, the state does not contend that any of those situations were present in this case. Therefore, under our case law, it would seem that the prosecutor's argument was an improper comment on defendant's failure to present evidence.

However, the state argues that we should not construe our case law to stand for such a brightline rule. Instead, the state argues that our case law sets up a two-stage analysis. First, the state contends, we ask "whether the prosecutor's statements—viewed in context, including the jury's instructions and the prosecutor's other statements—created a 'realistic possibility' of confusing the jurors about the standard of proof." Second—and only if the answer to the first question is yes—we determine whether the prosecutor's statements are justified by one of the situations described above. In this case, the state argues that the prosecutor's comments on defendant's failure to ask additional questions of his mother or doctor, understood in context, "created no realistic possibility of confusing the jury about the state's burden to prove defendant's mental state."

Even assuming that the state is correct that our case law establishes a two-stage analysis (a point we express no opinion on), we are not convinced that the prosecutor's argument in this case can survive the threshold inquiry for two reasons.

First, the prosecutor's argument was premised on the idea that defendant's failure to present additional evidence undercut his "voluntary intoxication" theory. More specifically, the state was arguing that defendant's failure

to establish how much Ativan he consumed and his failure to elicit expert testimony on the expected effects of that dosage suggested that defendant was aware that his theory was not meritorious:

> "They could have called a doctor to say these are the effects of Ativan and alcohol together, but they didn't. And *that's because the defendant was aware of what was going on and the evidence shows that.*"

(Emphasis added.) Yet that is precisely the type of argument that risks confusing a jury about the burden of proof. *See Howard*, 337 Or App at 680 (holding that a prosecutor's statements were improper where they invited jurors to consider the lack of evidence from defendant as evidence of guilt); *see also Perez*, 373 Or at 620 (Bushong, J., concurring) ("[Prosecutors] typically cannot comment on a defendant's failure to present evidence that might be probative of the defendant's innocence.").

In fact, the prosecutor's statements are quite similar to those we disapproved of in *Starr*—a drunk-driving case in which the prosecutor sought to rebut the defendant's claim that he consumed alcohol and a Xanax *after* he stopped driving by arguing that the defendant "never actually presented a bottle or even a prescription tape of Xanax." 337 Or App at 688. There, we explained that the state was free to argue that the defendant's evidence should not be believed, but that it was improper to suggest "that [a] defendant ha[s] the burden to corroborate his claim with further evidence." *Id.* Similarly, in this case, the premise underlying the prosecutor's argument was that defendant failed to sufficiently corroborate his claim that he was too intoxicated to form the requisite culpable mental states. In doing so, the prosecutor improperly suggested that defendant carried a burden of proof. *See Howard*, 337 Or App at 680 ("[W]hen the burden of proof rests with the state, it is improper for a prosecutor to suggest that the defendant carries a burden to submit evidence, or to invite the jury to convict defendant for failing to call witnesses to create a reasonable doubt." (Internal quotation marks and citation omitted)).

Second, the prosecutor's argument did not just rely on the implication that defendant had failed to present

enough evidence to corroborate his "voluntary intoxication" theory, the prosecutor also suggested that defendant chose not to present additional evidence "because the defendant was aware of what was going on and the evidence shows that." In other words, the state was suggesting to the jury that defendant's choice not to present additional evidence was because that additional evidence might support the state's theory rather than the defense's theory. We have previously explained (albeit in slightly different circumstances) that a "prosecutor cannot either implicitly or explicitly invite the factfinder to consider nonadmitted evidence in aid of the state's case." *State v. Spieler*, 269 Or App 623, 641, 346 P3d 549 (2015) (internal quotation marks omitted); *see also Perez*, 373 Or at 619 (Bushong, J., concurring) ("[A] prosecutor should never suggest or insinuate that there is more evidence of the defendant's guilt than what the prosecutor has presented at trial."). The problem is that the prosecutor did not just fault defendant for failing to produce evidence, he sought to draw the inference that defendant failed to produce the evidence *because it would have bolstered the state's case. See id.* at 643-44 (disapproving of an argument that functioned as an "open invitation for the jury to speculate that unadmitted evidence was favorable to the state" (internal quotation marks and citation omitted)).

In short, we are persuaded that the prosecutor's statements posed a realistic possibility of confusing the jury as to the proper burden of proof. Therefore, the trial court erred in overruling defendant's objection. The only remaining question is whether that error was harmless.

## HARMLESSNESS

Under Article VII (Amended), section 3, of the Oregon Constitution, we must affirm despite error if there is "little likelihood that the particular error affected the verdict[.]" *State v. Davis*, 336 Or 19, 32, 77 P3d 1111 (2003); *see State v. Rosenbohm*, 237 Or App 646, 649, 241 P3d 344 (2010) ("We must reverse when it is clear that an argument was improper, properly challenged and likely to prejudice the jury unfairly." (Internal quotation marks omitted.)). "[O]ur harmless-error analysis concerns 'the possible influence of the error on the verdict rendered, not whether this court,

sitting as a factfinder, would regard the evidence of guilt as substantial and compelling.'" *Starr*, 337 Or App at 691 (quoting *Davis*, 336 Or at 32).

The state's only argument on this point mirrors those it made to justify the prosecutor's statements in the first place. It emphasizes that the court and the prosecutor repeatedly and correctly explained the burden of proof to the jury and, therefore, the jury would not have been misled by the rebuttal arguments at issue. But, having already concluded that the prosecutor's statements posed a realistic risk of misleading the jury, what remains is simply the state's assertion that the error was harmless in light of the repeated instructions and arguments that correctly defined the state's burden of proof.

However, we have recently explained that improper burden-shifting nested within proper statements of the law magnify, rather than minimize, the risk of juror confusion:

> "[A]s a result of the prosecutor acknowledging the correct burden of proof and then juxtaposing it with the improper arguments premised on defendant's failure to call witnesses, the jury could reasonably presume that the prosecutor's inappropriate arguments aligned with the burden of proof. In other words, to lay jurors, the prosecutor's correct restatement of the burden of proof likely imbued his *improper* argument with the air of propriety."

*Arena*, 336 Or App at 298 (emphasis in original). And the harmfulness of the error was further exacerbated by the fact that the trial court explicitly overruled defendant's "burden shifting" objection in front of the jury. *See Starr*, 337 Or App at 691 ("[B]y overruling defendant's request to strike the prosecutor's improper argument, the trial court accentuated the error."). By overruling the objection, the court reinforced the idea that it was proper for the jury to consider the lack of evidence offered by defendant in reaching its verdict. *See Howard*, 337 Or App at 681 ("When the trial court overruled defendant's objection about improper burden-shifting, the jury may have been led to believe that the prosecutor provided an accurate statement of the law, or that it was proper to suggest that defendant needed to submit evidence."); *State v. Worth*, 231 Or App 69, 79, 218

P3d 166 (2009), *rev den*, 347 Or 718 (2010) ("The overruling of that objection gave the jury reason to think that the prosecutor's statement was, in fact, a correct statement of the law."). The problem is that "the state [had] so entangled the correct burden of proof with its mischaracterization of that burden"—and did so with the trial court's express approval—that it is unreasonable to suppose that the jury could tease out the proper rule of law from that tangled morass. *Arena*, 336 Or App at 298. Thus, we find the state's only harmlessness argument unpersuasive.

We acknowledge that the prosecutor's improper argument made up only a miniscule proportion of a lengthy and detailed argument that repeatedly and correctly explained to the jury the burden of proof that the state bore. Yet that improper argument struck at the very heart of defendant's only defense to the serious crimes he faced. *See Spieler*, 269 Or App at 645 (weighing in favor of a finding that the error was not harmless the fact that the prosecutor's improper statement was relevant to an issue "critical to the prosecution's case" rather than "some incidental or collateral matter"). As we understand it, defendant's case essentially rose or fell on the jury's findings regarding "voluntary intoxication." Because the precise issue affected by the state's improper argument was the issue on which defendant's case turned, we are simply unable to conclude that there was little likelihood that the error effected the verdict. Accordingly, we reverse the convictions that were implicated by the "voluntary intoxication" theory and remand, and we remand the remaining conviction for resentencing.

Convictions on Counts 1 to 5, 10, and 12 reversed and remanded; remanded for resentencing on Count 6; otherwise affirmed.